HOLLIS R. BAILEY, trustee, *vs.* CAROLINE A. WOOD & another.

SAME *vs.* CAROLINE A. WOOD.

SAME *vs.* MERCY L. WOOD.

Suffolk. January 26, 1909. — June 24, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Insurance*, Life. *Husband and Wife. Bankruptcy. Assignment. Equity Pleading and Practice*, Parties. *Equity Jurisdiction*, For an accounting.

Under the provisions of R. L. c. 118, § 73, money paid by an insolvent person as premiums on an insurance policy on his life, as a gift for the benefit of a third person, is money paid in fraud of creditors, which with interest thereon inures to their benefit from the proceeds of the policy, and the same rule applies where the third person is the wife of the insured.

Under R. L. c. 118, § 73, the trustee in bankruptcy of the estate of one, who while insolvent assigned insurance policies on his life to his wife and paid premiums thereon while insolvent, has no claim upon the proceeds of such policies except for the amount of premiums paid by the bankrupt while insolvent, and § 70 of the bankruptcy act of 1898, in regard to the surrender value of policies payable to the bankrupt or his personal representatives, has no application, where it does not appear that the amount of premiums paid in fraud of creditors exceeds the surrender value.

In a suit in equity by a trustee in bankruptcy of the estate of one, who while insolvent assigned insurance policies on his life to his wife and paid premiums thereon while insolvent, to obtain from the proceeds of the policies the amount of insurance premiums thus paid in fraud of creditors, the insurance companies which issued the policies are not necessary parties, and the plaintiff either may join them as defendants or may protect himself by giving to the companies notices in writing as provided in R. L. c. 118, § 73.

Under R. L. c. 118, § 73, the right of a wife to the proceeds of insurance upon the life of her husband extends, not only to policies which are payable to her or for her benefit when issued, but also to those which, after issue, are assigned to or in any way made payable to her, while the right of any other beneficiary, as

against creditors of the insured, is confined to policies expressed to be for his benefit at the time of their issue.

A life and endowment policy of insurance, known as a "fifteen-year policy," was taken out by a man upon his own life, and was made payable to him or to his estate. Afterwards the insured assigned the policy to his sister, then unmarried and a member of his family. She died, without having married, and her beneficial interest in the policy passed to the insured as her sole next of kin. Shortly afterwards, the insured, who later was adjudged a bankrupt, being then the sole owner of the policy, and knowing at the time that he was insolvent, made a voluntary conveyance of it to his daughter. The transfer was effected by changing the policy so that it read for "the benefit of his daughter M. absolutely in any and every event whether the policy becomes a claim by reason of his death or by maturity, provided only that she survive him." Later the policy matured in the lifetime of the insured, and his daughter collected the full amount of it, which was $5,000, and this sum "was received and used by her for her own purposes." The trustee in bankruptcy of the estate of the insured brought a suit in equity against the daughter to recover for the benefit of creditors the amount received by her under the policy. *Held,* that in substance the transaction was an assignment and was a transfer by the bankrupt to his daughter of a valuable asset as a gift; that the daughter was given no right as against creditors by the provisions of R. L. c. 118, § 73, because the policy was not made for her benefit when it was issued; therefore that the transfer was void as against the creditors of the bankrupt, and that the plaintiff as trustee in bankruptcy was entitled to the proceeds of the policy and to an accounting by the defendant for the money which she had received. And, *it seems,* that, even if the policy had been made originally in the form to which it was changed at the time of the transfer, the plaintiff still might have maintained his bill, because, as the transfer to the daughter was contingent on her surviving her father, the bankrupt still would have a contingent interest in the proceeds of the policy which, as against his creditors, he could not give away.

THREE BILLS IN EQUITY, filed in the Superior Court on July 8, 1908, by Hollis R. Bailey as trustee in bankruptcy of the estate of James A. Wood of Cambridge, the first two suits having been brought to recover insurance premiums alleged to have been paid by the bankrupt in fraud of creditors, and the third suit having been brought to recover $5,000, as the full amount of the proceeds of a life insurance and endowment policy assigned by the bankrupt to the defendant in that case, the plaintiff alleging that the transfer of the policy to the defendant by the bankrupt was fraudulent as against his creditors.

In each case the defendants or defendant demurred to the bill.

In the Superior Court the three cases were heard together upon the demurrers by *Richardson,* J., who made orders overruling the demurrers; but, being of opinion that the orders overruling the demurrers so affected the merits of the contro-

versies that the matters involved therein ought, before further proceedings, to be determined by this court, at the request of the defendants, he reported the cases for that purpose. If the demurrers, or any of them, were overruled rightly, the defendants were in such cases to answer; if the demurrers, or any of them, should have been sustained, the bills in such cases were to be dismissed with costs.

R. L. c. 118, § 73, provides, among other things, as follows: "If a policy of insurance is effected by any person on his own life . . . in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds, against the creditors and representatives of the person effecting the same; . . . provided, that, subject to the statute of limitation, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before such payment, the company shall have written notice by or in behalf of a creditor, with specification of the amount claimed, claiming to recover for certain premiums paid in fraud of creditors. Every policy of life insurance made payable to or for the benefit of a married woman, or after its issue assigned, transferred or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband, or by any other person, shall inure to her separate use and benefit, and to that of her children, subject to the provisions of this section relative to premiums paid in fraud of creditors."

*G. W. Anderson*, (*A. B. Hayden* with him,) for the defendants.

*A. L. Millan*, for the plaintiff.

HAMMOND, J. 1. Inasmuch as the first two cases involve each the same question of law, they will be considered together and apart from the third case. The policies were all taken out by James A. Wood (of whose estate in bankruptcy the plaintiff is trustee) in his name, upon his own life, were originally payable to him, his executors, administrators or assigns, and were

subsequently assigned, one to the defendant Caroline, his wife, and Mercy, his daughter; and the others to Caroline. These policies are within the provisions of R. L. c. 118, § 73 (formerly St. 1894, c. 522, § 73); and the rights of the parties are determined by that statute. *Bailey* v. *Wood, ante,* 548.

Under this statute the assignee of each policy holds the same free from the creditors of James, provided however " that, subject to the statute of limitation, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy." Shortly stated, the assignee is entitled to the proceeds of the policy less sums for premiums paid in fraud of creditors. To such sums, with interest thereon, the creditors are entitled.

In each of these cases the bill, after stating that before the acts thereinafter complained of the said James had begun to make provision for the needs of his wife by donation, and that she also had acquired by gift and inheritance a large amount of property from persons other than her husband, alleges that at the times of the respective assignments the said James was insolvent; and it further avers " that at the various dates when each and every one of said premiums were paid on said policy, said Wood well knew that he was indebted beyond his probable means of payment and that his situation was such that he could not as a prudent man having an honest regard to the rights of his creditors transfer to his said wife, or to his said daughter, by way of gift, any of his property, and that as the plaintiff is informed and believes and accordingly avers, said James A. Wood was insolvent at the various dates when said premiums were paid as aforesaid. Said bankrupt paid said premiums in fraud of his creditors and intending to hinder, delay or defraud his then existing creditors and also his subsequent creditors."

It thus appears that the bill sets out a case where payments of premiums have been made in fraud of creditors; and accordingly it must be held in accordance with the plain reading of the statute that so far as respects this branch of the case the demurrer must be overruled.

Ordinarily the opinion on this branch of the case would stop here. It is urged, however, by the defendants that a bankrupt has a right to make a reasonable provision for his wife and family

by way of insurance upon his life, and that even if the payment of premiums for such insurance does reduce the fund which otherwise would go to his creditors, they cannot complain, inasmuch as their rights are secondary to the reasonable necessities of the bankrupt's family. If this case goes back for trial, it may be urged at the close of the evidence that upon this ground it fails to show that the sums paid for premiums were not unreasonable and therefore were not in fraud of creditors, although appreciably reducing the fund otherwise available to meet their claims. It seems advisable to discuss this ground of defense at this time.

In the absence of any statute there has been much diversity of judicial opinion as to the rights of the wife of a bankrupt, so far as respects the proceeds of an insurance policy taken out by the bankrupt in his own name, upon his own life, and afterwards assigned without valuable consideration to his wife or for her benefit and that of her children.

In England it is held that the creditors of the bankrupt are entitled to the entire proceeds of the policy where it is settled upon the wife of the bankrupt while he is insolvent. Perhaps the most recent case is *Taylor* v. *Coenen*, 1 Ch. D. 636. In giving the opinion in that case Vice Chancellor Malins uses the following language: "It is said that the settlement was of very trifling amount, considering the extent of his business; that he had only paid premiums to a small amount, and that he could only have defrauded his creditors to the amount of those premiums. There is certainly a semblance of truth in that contention, but the answer to it is that the creditors have a right to all the property which would have belonged to him, and a considerable amount of property has been produced by these policies. In the state of his affairs he was not at liberty to reduce the amount of his property by the payment of the premiums, but as by paying the premiums he has kept on foot the policies, the creditors are entitled to have that property which resulted from such payment. It is true that if he had supposed the produce of the policies would go to his creditors he would very likely have allowed them to drop, and it was only for the sake of his wife and family that he paid the premiums. This view of the case may well be taken into consideration by the creditors themselves

when they see the position to which the testator's widow is reduced; but all I can do is to carry out the law, by which I am bound to declare that the settlements are void as against the creditors, and all the property realized upon them must go to the creditors." Indeed, as stated by Mr. Williston in an able article in 25 Am. Law Rev. 185, 188, the English cases "give no countenance to the view that a voluntary settlement of a policy of life insurance is to be treated differently from such a settlement of other property, or that a voluntary settlement upon the wife of the insured is to be dealt with more favorably than a settlement upon another." See the following cases cited by him: *Skarf* v. *Soulby*, 1 Mac. & G. 364; *Penhall* v. *Elwin*, 1 Sm. & Giff. 258; *French* v. *French*, 6 DeG., M. & G. 95; *Jenkyn* v. *Vaughan*, 3 Drew. 419; *Neale* v. *Day*, 28 L. J. Ch. 45; *Stokoe* v. *Cowan*, 29 Beav. 637; *Freeman* v. *Pope*, L. R. 9 Eq. 206; L. R. 5 Ch. 538.

In *Central Bank of Washington* v. *Hume*, 128 U. S. 195, it was held that where an insolvent paid premiums upon a policy taken out upon his life by his wife, the creditors were not entitled to the proceeds of the policy. It was said by Chief Justice Fuller in that case that the obvious distinction between the transfer of a policy taken out by a person upon his insurable interest in his own life, and payable to himself or his legal representatives, and the obtaining of a policy by a person upon the insurable interest of his wife and children and payable to them has been repeatedly recognized by the courts. Upon this subject the opinion proceeds as follows: " Conceding, then, in the case in hand, that Hume paid the premiums out of his own money, when insolvent, yet, as Mrs. Hume and the children survived him, and the contracts covered their insurable interest, it is difficult to see upon what ground the creditors, or the administrators as representing them, can take away from these dependent ones that which was expressly secured to them in the event of the death of their natural supporter. The interest insured was neither the debtor's nor his creditors'. The contracts were not payable to the debtor, or his representatives, or his creditors. No fraud on the part of the wife, or the children, or the insurance company is pretended. In no sense was there any gift or transfer of the debtor's property, unless the amounts paid as premiums are

to be held to constitute such gift or transfer." It was further held that under the circumstances the creditors could not reach the premiums. Upon this the following language was used: " Cases might be imagined of the payment of large premiums out of all reasonable proportion to the known or reputed financial condition of the person paying, and under circumstances of grave suspicion, which might justify the inference of fraud on creditors in the withdrawal of such an amount from the debtor's resources ; but no element of that sort exists here. . . . The premiums form no part of the proceeds of the policies, and cannot be deducted therefrom on that ground. . . . It seems to us that the same public policy which . . . recognizes the support of wife and children as a positive obligation in law as well as morals, should be extended to protect them from destitution after the debtor's death, by permitting him, not to accumulate a fund as a permanent provision, but to devote a moderate portion of his earnings to keep on foot a security for support already, or which could thereby be lawfully obtained, at least to the extent of requiring that, under such circumstances, the fraudulent intent of both parties [husband and wife] to the transaction should be made out." And it was accordingly held that the administrator of the deceased bankrupt's estate could reach neither the proceeds of the policies nor the amount of the premiums paid.

In many of the States of this Union the matter is regulated by statute. Some, as in Rhode Island, (Pub. Sts. 1882, c. 166, § 21,) limit the amount of the policy the proceeds of which go to the wife ; others, as in Tennessee, (Code, 1884, § 3135,) do not; some, as in Alabama, (Code, 1886, p. 2356,) limit the amount of the premiums the bankrupt may pay from his estate; others, as in Pennsylvania, (Purd. Dig. 1873, p. 802,) do not; some, as in Georgia, (Code, 1882, § 2820,) respect only policies originally made in favor of the wife and children; others, as in Maryland, (Rev. Code, 1878, art. 51, §§ 24–26,) respect policies either originally so made or subsequently *bona fide* assigned to them. In several of the States there is a statute similar to ours.

In the absence of any statute we think the prevailing opinion in the States is that where a policy of insurance is originally taken out in the husband's name and payable to his estate, a voluntary assignment, when insolvent, by him to his wife is void as to his

creditors. *Appeal of Elliott's Executors,* 50 Penn. St. 75 (decision made in 1865, before the Penn. St. of 1868, No. 64). *Stokes* v. *Coffey,* 8 Bush, 533. *Burton* v. *Farinholt,* 86 N. C. 260. *Catchings* v. *Manlove,* 39 Miss. 655. See also *Stigler* v. *Stigler,* 77 Va. 163; *Pullis* v. *Robison,* 73 Mo. 201; *Thompson* v. *Cundiff,* 11 Bush, 567; *Barry* v. *Equitable Assur. Soc.* 59 N. Y. 587. In the matter of *Succession of Hearing,* 26 La. Ann. 326, the majority of the court reached a contrary result. In several of the cases, including some of those above cited, it is said that this rule should not be applied when the policy is originally taken out in the name of or in behalf of the wife or children, or that in this last class of cases only the premiums paid by the husband when insolvent should be reached by his creditors. In *Merchants' & Miners' Transportation Co.* v. *Borland,* 8 Dick. 282, the court refused to follow *Central Bank of Washington* v. *Hume,* 128 U. S. 195, rejected the distinction between the two classes of cases, and squarely held that payments made by a husband, when insolvent, upon a policy of life insurance upon his own life for the benefit of his wife and child, are essential gifts to the beneficiary and are fraudulent and void as against creditors existing at the time of such payments.

It would not be profitable to discuss further the state of the authorities upon this general subject. They are irreconcilable in many respects. Whoever desires to pursue the subject further in detail will find in the above mentioned article in the American Law Review an able discussion of the law, with the citation of many cases; also in a note in 88 Am. Dec. 530, a good collection of the earlier cases, and in a note in 29 Am. St. Rep. 360, some instructive references to the later cases. See also the able and exhaustive opinion of Wilson, J., in *Hendrie & Bolthoff Manuf. Co.* v. *Platt,* 13 Col. App. 15, and 20 Cyc. 363, for a very full collection of cases.

In this state of the law what construction is to be given to R. L. c. 118, § 73? The legislation finally ending in this statute began with St. 1844, c. 82. It does not appear that up to the time of the passage of the statute our own courts had had occasion to consider the precise question of the relative rights of the wife and creditors of an insolvent debtor in these matters. But see now *Bailey* v. *Wood, ante,* 548. The statute was quite

general, but we shall speak of it only as it affects the question before us. St. 1844, c. 82, did not cover policies assigned. It provided in substance that a married woman for whose benefit or in whose name the policy was taken out should hold the same free from the creditors of her husband and of the person who took out the policy, except that in case of any premium paid in fraud of creditors a proportional amount of the interest in the policy or of its proceeds should inure to the benefit of such creditors. The statute was amended so as to apply where the husband procured insurance on his own life expressed in the policy to be for the benefit of his wife (St. 1847, c. 248), and was further amended so as to apply to policies assigned or transferred. St. 1864, c. 197. As to the matter of premiums, it was amended so as to give the creditors only the amount of the premiums paid in fraud of them instead of a proportionate share of the proceeds, (St. 1854, c. 453, § 28,) and this right of the creditors was still further restricted by St. 1864, c. 197, to those premiums not barred by the statute of limitations.

In view of the then confused state of the law as to the relative rights of the wife on the one hand and creditors of the husband on the other, in and to either the proceeds of insurance upon the life of the husband or the premiums paid by him when insolvent for such insurance, both in cases where the policy was expressed to be made payable to him or his estate and afterwards was transferred to his wife, as well as in cases where the policy was expressed to be payable to his wife or for her benefit, we are of opinion that it was the purpose of this legislation to lay down plain and simple rules easily followed ; and that the true intent and meaning of the statute was in the first place finally to establish the general right of the wife to the proceeds of insurance upon the life of her husband, whether the policy was originally for her benefit or whether, being originally for the benefit of the husband and his estate it was afterwards transferred to her, and whether or not the husband was insolvent at the time of the transfer ; and in the second place to establish the right of the creditor to have the benefit of the premiums paid by the husband when insolvent, irrespective of the question of his duty to support his wife. As the statute was originally passed, as above stated, the right of the creditors was measured by a propor-

tional part of the proceeds of the policy, but is now measured by the amount of premiums with interest subject to the statute of limitations.  Such a construction of the statute clears away the haziness of the judicial atmosphere upon the subjects involved, and is just and equable.  It restores to the creditors of the insolvent what has been taken away from the fund to which before the insurance they could have looked for the satisfaction of their claims, and gives the rest to the wife.  Under this statute, accordingly, it must be held that money paid by an insolvent as premiums on a policy on his life, inuring to the benefit of a third party as a gift, is money paid in fraud of his creditors, and that the principle is applicable irrespective of the question whether or not the third party be his wife.

In *Gould* v. *Emerson*, 99 Mass. 154, there does not appear to have been any insolvency of the husband either when the policy was taken out or when the premiums were paid, and the point decided was that a life insurance policy expressed to be for the benefit of the widow and child of the assured could not be affected by his will.  The remarks of Gray, J., on pp. 155, 156, as to the object of the statute are in no way inconsistent with this view.

There have been various decisions in other States upon similar statutes, among which see *Ionia County Savings Bank* v. *McLean*, 84 Mich. 625 ; *Lehman* v. *Gunn*, 124 Ala. 213 ; *Adler & Sons Clothing Co.* v. *Hellman*, 55 Neb. 266; *Hise* v. *Hartford Ins. Co.* 90 Ky. 101.  In this last case the Court of Appeals of Kentucky, under a statute similar to ours, held that inasmuch as by the law of that State the insurance of the life of a husband for the benefit of his wife and children before the statute was valid .against his creditors unless the amount of the insurance was unreasonable in view of his indebtedness and his ability to pay, the statute should be construed in a similar way as to what was fraudulent appropriation of his property for that purpose.

It is further urged by the defendants that even if the premiums were some of them paid in fraud of creditors the plaintiff is not entitled to any relief ; that a policy of life insurance is merely a promise by the insurer to pay a certain sum at maturity of the policy upon certain conditions, one of which is the payment at stated periods of a certain premium ; that the interest

of the beneficiaries is simply contingent; that in this case the defendants have received nothing and may never receive anything ; that the proceeds of a policy are the sums payable by the receiver according to the terms of the policy, and that until such sums are payable according to its terms there are no proceeds which can be reached.

While it is true that these beneficiaries have not yet received anything and may never receive anything upon these policies, and that therefore no decree can now be made directing them to pay to the plaintiff any part of the sums paid by the insolvent Wood in fraud of his creditors, it by no means follows that as between the plaintiff and the defendants their respective rights to the proceeds, when finally payable, cannot now be determined. The prayer of the plaintiff is in the alternative, namely, that the plaintiff may be entitled to a decree either to receive from the defendants the amount of the premiums fraudulently paid, or to receive the same out of the proceeds of the policies. Even if the fund is contingent and even if it may never become payable, we see no reason why the respective rights of the parties to this suit, as between themselves, may not be now settled. It is a right which can be assigned by the trustee in bankruptcy and by a sale of it the creditors may presently realize something out of it. See St. 1884, c. 285, (now R. L. c. 159, § 3, cl. 7,) *Alexander* v. *McPeck*, 189 Mass. 34, and cases there cited. Nor is there anything in § 70 of the United States bankruptcy act as to the surrender value of policies payable to the bankrupt or his personal representatives which is necessarily inconsistent with this. The defendants who are assignees of these policies hold them free from the power of the bankrupt without their consent to convey or surrender them. They hold them also free from any claims of creditors except for the amount of premiums fraudulently paid. For the amount only of the sums so paid can the plaintiff look to the proceeds of these policies. Should this amount exceed the surrender value, the contention of the defendants on this branch of the case will perhaps need consideration. It is unnecessary to consider it now. See *Pulsifer* v. *Hussey*, 97 Maine, 434.

Although one of the grounds of the demurrer is that the insurance companies have not been made parties, yet as that point

is not argued on the brief of the defendants, we suppose that it is waived. It may be well to say, however, that we see nothing in it. The company clearly has no interest in the litigation, and in view of the language of the statute we think the plaintiff may either join the company as a party defendant or protect himself by giving the company a written notice as provided in the statute. The defendants are in no way prejudiced by a failure to join the company.

2. As to the third case. Here the circumstances as set forth in the bill are different. The policy, being what is known as a "fifteen-year policy," was taken out by the said James upon his own life, was originally made payable to him or to his estate, and was subsequently assigned to his sister Sarah, then unmarried and a member of his family. In August, 1902, she, never having been married, as we understand, died intestate, and her beneficial interest in the policy went to him as her sole heir and distributee. Shortly afterwards, he, being the person upon whose life the policy was issued and being the sole owner of the beneficial interest in it, and knowing at the time that he was insolvent, made a voluntary conveyance or transfer of it to his daughter, the defendant. The transfer was effected by changing the policy so that it read for "the benefit of his daughter Mercy Lucy Wood absolutely in any and every event whether the policy becomes a claim by reason of his death or by maturity, provided only that she survive him." On November 2, 1907, the policy matured and the defendant collected the full amount of the same, $5,000, and this sum "was received and used by her for her own purposes."

The first question is whether the defendant held this policy under the protecting wing of the statute. At the time of the transfer the said James was the full owner of the legal and beneficial interest in the policy. The defendant was not his wife. She was his daughter, apparently of full age and a member of his family. She was not a married woman, and therefore was not included within that part of the statute which relates solely to married women. Unless her case is described in the first part of the statute she is not within it. That part, so far as material, reads thus: "If a policy of insurance is effected by any person on his own life . . . in favor of a person other than

himself having an insurable interest therein, the lawful bene-
ficiary thereof, other than himself or his legal representatives,
shall be entitled to its proceeds, against the creditors and repre-
sentatives of the person effecting the same," subject to claims
for premiums fraudulently paid as thereinafter provided.

The first statute in this line of legislation (St. 1844, c. 82)
included two classes of policies, first, those made " on the life of
any person expressed to be for the benefit of a married woman,"
and second, those " effected by any person on the life of another
expressed therein to be for the benefit of such other or his repre-
sentatives or for that of a third person." There was no lan-
guage alluding to a transfer of any policy or a change in the
beneficiary after its issue. The language plainly speaks in each
class only of the condition of the policies when first issued.
Nothing is said of policies which by assignment or otherwise
have been changed in legal effect after their issue. By St.
1847, c. 248, the second class was enlarged so as to include a
policy taken out by a person on his own life expressed to be
" for the benefit of another." An important amendment was
made by St. 1864, c. 197, which extended the statute so as to
include a policy of insurance on the life of any person " duly
assigned, transferred or made payable to any married woman,
or to any person . . . for her benefit." By this amendment the
provisions as to the policies of the first class, namely, those in
favor of a married woman, were extended so as to embrace pol-
icies assigned or made payable to her after their issue. But this
amendment was not applicable to the second class. That stood
as before, and so has remained ever since.

There is a marked distinction, therefore, as to the right of a
wife under this statute and the right of any other beneficiary.
The right of the wife extends not only to policies expressed for
her benefit when issued, but also to those which, after issue, are
assigned or in any way made payable to her for her benefit, while
the right of any other beneficiary is confined to policies expressed
at the time of their issue to be for his benefit.

In the present case the insolvent, at the time of his transfer
to his daughter, was, as has been said, the sole owner of the
legal and beneficial interest in the policy, not only by reason
of the original terms of the contract, but by virtue of his in-

heritance as heir of his sister, the first assignee. It was a contract to pay him money at its maturity in November, 1907, or to his estate in case of his decease before that time. Before the assignment it was part of his assets to which the creditors had a right to look for the payment of their claims. It is true that he could have transferred it to his wife, and by the express language of the statute she could have held it, but the transfer was made not to her but to his daughter. The effect of this transfer to his daughter, if valid, was to diminish his estate by so much. It cannot make any difference that the transfer was made by changing the reading of the policy. Not merely the form but the substance of the transaction is to be considered, and the substance was a transfer from his own hand to that of his daughter of a valuable asset as a gift. The daughter can claim no benefit under the statute ; and by the overwhelming weight of authority she cannot hold the policy under the common law. The transfer is void as against the creditors of the bankrupt. See the cases hereinbefore cited.

It may be remarked in passing that in any event the demurrer would have to be overruled, for the transfer to the daughter was contingent upon her surviving her father. The bankrupt still has a contingent interest in the proceeds of the policy which he, as against his creditors, cannot give away.

As the daughter has received the money she can be made to account for it in this proceeding. At this stage of the case it is not necessary to formulate the precise form of the decree. That must be determined after the hearing on the merits.

The demurrers having all been rightly overruled, the respective defendants, by the terms of the report, are to answer.

*So ordered.*