[*Civ. No. 4533. First Appellate District, Division One.—August 20, 1923.*]

RUTH WILLIAMS, as Guardian, etc., Respondent, v. NORA MAGUIRE WILLIAMS, Appellant.

**[1]** MARRIAGE—ANNULMENT—INCOMPETENCY — FINDING — EVIDENCE— APPEAL.—In an action by a guardian to annul a marriage between her ward and the defendant on the ground that the ward at the time of said marriage was mentally incompetent and incapable of contracting said marriage, the finding of the trial court that the ward was incompetent and of unsound mind at the time of the marriage will not, where there is a conflict in the evidence upon the question, be disturbed on appeal.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmet Seawell, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. M. Barrett and C. W. Anderson for Appellant.

Geary & Geary for Respondent.

RICHARDS, J.—Appeal from a judgment of the superior court of Sonoma County annulling the marriage of John Joseph Williams and Nora Maguire Williams.

The undisputed evidence shows the following facts: Upon the entry of this country into the recent World War, Williams enlisted in the infantry, was in due time sent to France with the First Division and took part in some of the active service in which that division was engaged. On or about the eighth day of June, 1918, he was wounded in the head by shrapnel, received treatment for said injury, and later returned again to active service. Williams was again wounded on or about the 20th of July, 1918, and as a result thereof it was necessary to amputate his right foot. He was given treatment at various hospitals until, under date of September 7, 1918, he was admitted to the Walter Reed Hospital, Washington, D. C., for observation, at which hospital he remained until September 9, 1919, and was then transferred to the Letterman General Hospital, San Francisco. Under date of November 21, 1919, the army medical board recommended Williams for discharge as "unfit for service as a soldier because of (1) amputation of right leg just above ankle joint. (2) Dementia praecox, paranoid type," and made the further statement that "soldier cannot be released from military control without danger to himself or others. Soldier to be discharged at this post and turned over to his sister, Mrs. B. F. Clark, who will assume responsibility for his care and treatment." Williams was discharged from the army December 1, 1919, and delivered into the custody of Mrs. Clark, who resided in Oakland, Alameda County, California. On or about January 15, 1920, Williams, without making known his intention, left the home of Mrs. Clark, went to Washington, D. C., and under date of February 15th was there married to Nora Maguire. He remained in Washington until about April 4, 1920, when he returned to California, going to Santa Rosa, Sonoma County, where he became noisy and

obscene, destructive, impulsive, and suffered from hallucinations, was removed to a city hospital, and on the 30th of April was by the superior court of Sonoma County found to be afflicted with dementia praecox, paranoid type, and was committed to the state hospital at Talmadge, Mendocino County, California, May 1, 1920. The medical staff at said state hospital diagnosed the case as dementia praecox, · paranoid type, and pronounced the patient incurable. Under date of May 10, 1920, at the hearing had upon the petition of Ruth Williams to be appointed his guardian and alleging him to be incompetent, the said superior court adjudged that John Joseph Williams was mentally incompetent and incapable of taking care of himself and managing his property, and thereupon appointed Ruth Williams as the guardian of the person and estate of the said incompetent. Thereafter and on November 10, 1920, Ruth Williams, as said guardian, commenced this action, alleging that at the time of the marriage heretofore referred to, John Joseph Williams was mentally incompetent and was incapable of contracting said marriage, and praying that the marriage be annulled and the bonds of matrimony dissolved. The case came on for hearing and upon the conclusion thereof the court filed its findings of fact wherein it recited with much of detail the foregoing facts, and found therefrom that at the time of the marriage "at all times since, and is now, mentally incompetent and of unsound mind" and as conclusions of law therefrom "John Joseph Williams is entitled to have the said marriage . . . annulled." Judgment was entered accordingly. From said judgment defendant prosecutes this appeal.

The first point made by appellant is that the evidence is insufficient to support the finding that Williams was incompetent and of unsound mind at the time of the marriage. In support of this contention the plaintiff relied upon the following facts, as adduced at the trial of the cause: Williams met appellant in the early part of 1919 at Washington and frequently thereafter prior to his removal to the Letterman Hospital at San Francisco. Shortly after his discharge Williams returned to Washington, D. C., again met Miss Maguire, proposed marriage, was accepted and they were married. In support of the sanity of Williams at the time of the marriage, appellant produced no

medical experts but relied entirely upon the testimony of herself and lay witnesses who were more or less intimately acquainted with him. These witnesses were Mrs. Martin, who, it is stated, saw Williams every day for eight months, at whose home he called to participate in social activities; a Mrs. Morton, who had an extensive acquaintance with him when he was in the hospital; a Mrs. Munn and the priest who performed the ceremony. Mrs. Martin had a floral business across the street from the Reed Hospital in Washington and had a great interest in the welfare of the soldiers and reconstruction aides serving at the hospital. Nora Maguire was employed by her as a maid. When Williams returned to Washington he went to Mrs. Martin's home and found that Miss Maguire was no longer with her, but he saw her within three or four days and regularly thereafter. Williams was given employment by Mrs. Martin in her greenhouses and shortly after his arrival Williams and Miss Maguire announced their intention of getting married. Mrs. Martin helped Williams procure an engagement ring, was present when he procured the marriage license and also at the marriage. Her testimony in substance was that at this time Williams seemed to be normal in practically every way and in all his dealings, and that she considered him sound mentally. The testimony of Mrs. Munn and Mrs. Morton was to the same effect, although they had much less opportunity to observe him. The priest who performed the ceremony testified that before a marriage ceremony is performed it must first be ascertained that the people are perfectly competent in every way to contract marriage and that it is necessary they have the proper mental qualifications. "Questions are asked in regard to their relationship, etc., and whether they are Catholics or non-Catholics, and where they had been baptized, the names of their parents, the securing of the baptismal certificate, etc., when possible. I asked the questions of Nora Maguire, because she was the Catholic party. All I could ascertain of John Williams was that he had been baptized, but not a Catholic."

The lay witnesses called for plaintiff were Elizabeth Henderson, a reconstruction nurse in the medical department serving at the Reed Hospital, who had met Williams at Mrs. Martin's house and later in Letterman Hospital at

San Francisco. In her opinion, based upon her frequent observation of him before his marriage, when in the Reed Hospital at Washington, he was of unsound mind. She testified that he had a faraway look in his face and would talk to no one. She also observed him at Letterman Hospital and testified that his condition was just the same as at the Reed Hospital. Another witness was John E. True, a fellow-soldier, who testified that Williams was peculiar even when he was an occupant of the Walter Reed Hospital and that he was the butt of the jokes of the other boys in the ward at said hospital by reason of his actions and that he considered him of unsound mind. Both Williams and True were afterward transferred to Letterman General Hospital at San Francisco and True testified that while there in October, 1919, Williams was accompanied by an attendant and showed the same symptoms as at Washington, but milder. When both men had been discharged, and prior to his marriage, Williams visited True at the latter's home and place of business in Vallejo, California, and, according to True, he had peculiar actions and was irrational at that time. Congressman Clarence F. Lea, who interviewed Williams during the time he was in the Walter Reed Hospital, testified that he had a fifteen minute talk with him, but that he gave no evidence of having any reasoning power. The plaintiff called four doctors who qualified as experts and testified in substance that their examination indicated that the patient was suffering from dementia praecox, that his condition was such that their opinion was that at the time of his marriage it would have been impossible for him to have appreciated the solemnity of the marriage vows, as his judgment would have been too impaired for him to understand the nature, obligations, and responsibilities of marriage. We do not deem it necessary to go further into the testimony of the experts. Suffice to say that their conclusion, uncontradicted by any medical expert, was that Williams must have been insane at the time of his marriage. This testimony is in harmony with the conclusions already given in the testimony of the plaintiff's lay witnesses. [1] It is not necessary to further review the evidence for the purpose of showing that there is substantial conflict therein with relation to the competency of Williams at the time of his marriage with the appellant

herein and that this being so this court will not disturb the findings and conclusion of the trial court in that regard.

The only other question presented is as to the admission in evidence of the army medical record of Williams. The foregoing review of the evidence shows that there is ample evidence, outside of the record objected to, to support the findings and conclusions of the trial court, even though it may have been in error in admitting this particular bit of evidence. We do not, therefore, deem it necessary to discuss the question of its admissibility.

Judgment affirmed.

Tyler, P. J., and St. Sure, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 18, 1923.

Seawell, J., and Richards, J., *pro tem.,* did not participate.