[Civ. No. 7370. First Appellate District, Division One.—June 3, 1930.]

In the Matter of the Estate of FRANK LENCI, Deceased. MARY LENCI MALERBI, Respondent, v. PAUL MAFFEI et al., Appellants.

Thomas F. O'Neill and Ivan N. Maroevich for Appellants.

Robert McMahon, John P. Doran, Geary & Geary, C. J. Tauzer and A. W. Hollingsworth for Respondent.

WARD, J., *pro tem.*—This is an appeal from the judgment annulling and revoking the probate of the will of Frank Lenci, deceased, and from the order denying defendants' motion for a new trial. The contest was tried by a jury, which rendered a verdict upon both grounds in favor of the contestants, viz., that deceased was not of sound and disposing mind at the time of the execution of the will and that it was procured by undue influence.

■ The first contention of appellants is that the trial court erred in sustaining an objection to a question propounded to one of the subscribing witnesses to the will. The witness was asked, ''In your opinion what was the condition of his mind at that time, sound or unsound?'' The respondent objected and the court indicated that the foundation for the question had not been laid, whereupon appellant reframed the question. The reframing of a question is, in effect, a withdrawal of the original question and no error may be successfully claimed thereon. In the case at bar, as reframed, the question was allowed. (Trans., p. 419, ll. 1–26.)

■ We are not prepared to rule that the admission of the army discharge and medical report attached thereto was properly admissible, but as in the case of *Williams* v. *Williams*, 63 Cal. App. 482 [218 Pac. 783], wherein a similar discharge was presented, we find other evidence to support the finding of the jury that the decedent was of unsound mind. Its presentation was not prejudicial, as epilepsy, while in many instances is the cause of insanity, it does not constitute it. The admission of the medical record was not presented to prove insanity, but to establish the cause of the mental condition. We find ample other evidence to establish the cause irrespective of any evidence of epilepsy.

■ A commitment of the mother of decedent to an insane hospital was introduced. The record shows that the mother some time before her death was released from the asylum and died at the ranch of the father of testator. In a case of unsoundness of mind it was proper that the jury should know whether or not the immediate progenitors of the testator were of weak or of normal mental condition. (*Estate of Dolbeer*, 149 Cal. 248 [9 Ann. Cas. 795, 86 Pac. 695].)

■ Considerable evidence was introduced relative to the intoxication of the decedent. It was not the claim of the contestants that Lenci was drunk upon the date of making the will, but rather that continuous drinking to excess produced, or tended to produce, a weakness in mentality resulting in unsoundness of mind. This evidence was properly admitted. (*Estate of Gharky*, 57 Cal. 278.)

■ The contention of appellants that the certified death certificate from the bureau of vital statistics was improperly admitted and that the jury was not instructed as to the pur-

pose for which the certificate could be considered may be answered by the statement that our attention has not been called to any proposed instruction offered by appellant upon this subject. A death certificate from the bureau of vital statistics, when properly certified, is *prima facie* evidence in all courts of the evidence therein stated. (Sec. 15 of an act approved March 18, 1905, as amended in 1911, Stats. 1911, p. 287.) If the death certificate is not in proper form it should not be used as authority for burial, cremation or disinterment purposes, but this would not interfere with its introduction into evidence as *prima facie* proof of its contents.

Appellants list the testimony of five witnesses as not coming within the intimate acquaintance rule. Subdivision 10 of section 1870 of the Civil Code provides that the opinion of an intimate acquaintance, as to the mental-sanity of a person, is competent; but is silent as to the degree of intimacy that is essential. It is therefore a matter in the discretion of the trial court, and rulings thereon will not be disturbed unless there is a clear abuse of discretion. Courts should consider the period of acquaintance and the opportunity for observation. One opportunity of observation may well qualify a witness in one case· and disqualify another witness in a second case, depending upon the knowledge of the testator's mental peculiarities, intellectual status, eccentricities of character, environment, behavior and conduct generally. There can be no fixed and fast rule. In the present case one witness testified that the decedent had threatened suicide and that he "had an empty stare." The witness based her opinion of his mental condition "on my observation of him all through his life, way back in his childhood." It is true this witness did not see him often over a period of thirty years, but upon the occasions of meeting him her opportunity for observation was good. A second witness knew him for about one year and a half and saw him about two or three times a week. A third saw him a couple of times a week for a period of about six months. A fourth knew him for four years and a half and met him two or three times a week, and the fifth knew Lenci for three or four years and saw him three or four times a week. The court used its discretion wisely in determining that these witnesses were intimate acquaintances and permitted them

to testify. It was the duty of the jury to determine the weight of the opinion of these witnesses. (*People* v. *Williams,* 184 Cal. 593 [194 Pac. 1019].)   The testimony of these witnesses indicates a weakness of mind through which the testator was unable to carry on an intelligent conversation and which likened him to the harmless lunatic who receives the sympathy of the adult and the derision of the child.   If the jury found this condition was continuous and confirmed so that it might be classified as habitual insanity, there can be no doubt as to the sufficiency of the reasons given by various witnesses.   (*Estate of Baker,* 176 Cal., at p. 436 [168 Pac. 881].)

Appellants contend that the motion for a nonsuit upon both issues of the case should have been granted.   Upon the issue of undue influence the transcript presents evidence of opportunity to exercise undue influence, but prior to the making of the will no proof of actual use of undue influence. Whatever confidential business relations existed between Frank Lenci and Paul Maffei, beneficiary under the will herein and administrator of the estate of Vincent Lenci, standing alone, would not be sufficient to shift the burden of proof from the contestants to the proponents.   Respondents contend that there is ample evidence to establish a relationship *uberrimae fidei* between Paul Maffei and Frank Lenci as trustee and *cestui que trust* and that therefore the burden of proof shifted.   Without passing upon the sufficiency of the evidence it did not appear prior to the presentation of the motion for nonsuit and accordingly upon the issue of undue influence the motion should have been granted.   We find, however, ample evidence justifying the position of the trial court in denying the motion for a nonsuit on the issue of unsoundness of mind.   In this case it was necessary that the contestants should paint a picture of practically the whole life of the decedent.   The tale fills pages of the transcript, but briefly the father and the mother were cousins.   The mother was at one time an inmate of an insane asylum, was subsequently released and lived with her husband and son on the ranch.   As a child Frank Lenci was sickly and "wasn't all there."   His childhood sickness "left him kind of weak in his mind."   After childhood he became worse.   He was of uncouth appearance and "looked dirty."   His eyes had an empty stare and "were all the time twisting and twirling

around and were very shiny." "He looked like a man whose mind was wandering." "He appeared abnormal." He was forgetful and in conversation was incoherent. He was unable to comprehend that sugar which he had purchased had leaked out of a sack. He slept in disreputable quarters over an old wine cellar when suitable habitation on his own property was available. He thought that he had obtained nothing from his father's estate though he was entitled to one-half thereof. Small boys teased him and adults made signs indicating the condition of his mind. He used liquor to excess. These are a few bits of evidence presented in chief.

■ Unsoundness of mind cannot always be proved by one statement, one circumstance or by one witness, but often rests upon seemingly slight but numerous circumstances, which, when "taken together, carry conviction of mental unsoundness." (28 R. C. L. 98, and cases cited.) ■ Incompetency need not be proved by direct evidence, but acts, conduct, statements, both before and after, may be the determining factor though no evidence be introduced of the exact condition of the testator's mind upon the day of the making of a will. (*Estate of Johnson,* 72 Cal. App. 670 [237 Pac. 816].) ■ One may be so stupid as to be unable to comprehend ordinary affairs or so dull or obtuse as not to know that he owned property; if so, then it is a fair inference to draw that such a person would have no conception of the character, nature or result of a testamentary disposition and to that extent be of unsound mind.

■ Objection is made of the remoteness of part of contestants' evidence. Of necessity it was remote for the purpose of indicating the continuation of this condition of mind that the jurors might consider and compare the remote with the evidence of recent date and therefrom infer the unsoundness of mind upon the date of the will.

■ The papers in the estate of Vincent Lenci, father of the decedent, Frank Lenci, were introduced in evidence in this proceeding without objection. Appellants now not only contend that such evidence was inadmissible, but that it was prejudicial. The first bit of evidence of Paul Maffei's connection as administrator of the estate of Vincent Lenci was drawn out on direct examination by appellants. (Trans., 384, l. 21 to l. 14, p. 385.) It was therefore a proper

subject for cross-examination. On page 391 of the transcript contestants propounded the following questions: "Q. You acted as administrator of the estate of Vincent Lenci? A. Well, Frank— Q. You acted as administrator of the estate, you received the money and paid it out? A. Yes, sir." These questions were asked without objection. When the witness was interrogated in reference to the receipt of money for rent of the Richmond property an objection was made which was overruled and subsequently proponents moved to strike out all the evidence with reference to the account in the estate of Vincent Lenci. This motion was denied. To further questions we find further objections which the court overruled but no further motion to strike out. Appellants now contend that the admission of such evidence was prejudicial to the rights of the proponents and that it was impossible to wipe out this evidence from the mind of the jury. The evidence was presented upon the issue of undue influence. In view of this court's conclusion that the motion for a nonsuit upon the issue of undue influence should have been granted, but that the motion for nonsuit upon the issue of unsoundness of mind was properly denied, no injury can befall appellant upon the issue of undue influence. However, it might be contended that this evidence was prejudicial to the rights of proponents upon the issue of unsoundness of mind. It was clearly stated by counsel for respondents: "The purpose is only this—this man is charged with undue influence." This statement was made in the presence of the jury and they certainly understood that the evidence had nothing to do with the question of the unsoundness of mind of Frank Lenci. The embezzlement, if there was an embezzlement, of the funds of the Vincent Lenci estate by one of the proponents of the Frank Lenci will could not have induced the jury to have returned a verdict on the unsoundness of mind issue when they well knew that the collection of rents by Paul Maffei had nothing to do with the unsoundness of mind of Frank Lenci. The court instructed the jury that "each of the grounds of contest of the will raised by the contestants are separate and distinct issues." The jury undoubtedly did not take this phase of the evidence as applying to unsoundness of mind.

Appellants contend that the evidence was insufficient to support a finding that the will was an unnatural one. There

was no such finding submitted to the jury and the only instruction given upon this subject was one submitted by appellant.

The motion for a nonsuit upon the issue of undue influence should have been granted, but it is unnecessary to make any further order thereon in view of our conclusion that there is ample evidence to sustain the finding of unsoundness of mind and the record, being free of reversible error, the judgment and the order denying the motion for a new trial are affirmed.

Tyler, P. J., and Cashin, J., concurred.