[Civ. No. 10759. Second Appellate District, Division Two.—February 11, 1936.]

FRANK BRYSON, as Administrator, etc., Appellant, v. KATHARINE L. MANHART et al., Respondents.

W. C. Dalzell and Robert R. Stentz for Appellant.

Derthick, Cusack & Ganahl for Respondents.

WOOD, J.—By this action the public administrator seeks to recover for the estate of George Channing Lawrence the proceeds of certain insurance policies collected and held by the defendants and to set aside the alleged fraudulent transfers of certain property made by decedent in his lifetime. Judgment was entered in favor of defendants, the trial court having found that there was no intention on the part of the decedent and defendants to hinder, delay or defraud creditors. This finding is attacked by plaintiff and a review of the evidence is necessary for a proper understanding of the problem before us.

The transactions involved covered the period from September 15, 1919, to July 4, 1928. At various intervals from the first-mentioned date to November 17, 1926, Lucy W. Whipple, aunt of decedent and a resident of Boston, on behalf of herself and as trustee for her sisters, one of whom was the mother of decedent, entrusted to decedent the sum of $271,489.02 to be invested and reinvested in their behalf. Decedent was a lawyer living in Pasadena during most of the time in which he handled the trust funds. He and defendants, husband and wife, moved to Pasadena or the vicinity of Pasadena in the year 1922. He did not maintain an office or engage in the practice of law, and so far as can be learned from the record, he did not engage in any gainful occupation. He did, however, hold in his name several pieces of real estate of comparatively small value and over a period of years bought and sold securities on the stock exchange. The total purchases in this line of activity amounted to approximately $391,000, and his sales amounted to approximately $383,000. Including commodity purchases his total losses were approximately $35,000. No accounting was ever made between Lucy W. Whipple and decedent. She presented a claim to the public administrator based upon the trust fund she had delivered to him. This claim was approved by the public administrator and the court in the

sum of $196,489.02. Other debts were left by decedent amounting to approximately $25,000.

Before Mrs. Whipple entrusted funds to decedent, he carried but one insurance policy the value of which was only $4,000. While decedent was handling his aunt's funds he increased the amount of his insurance to approximately $200,000. Except in the case of one policy for a short period, which is of no consequence in this discussion, the wife of decedent, Violet Lawrence, was named beneficiary in the thirteen policies which he carried. Violet Lawrence died February 18, 1928. Thereupon the estate of George Channing Lawrence became beneficiary. On March 16, 1928, or shortly thereafter, at the request of decedent, defendant Katharine L. Manhart, his sister, was made beneficiary in each of the policies. George Channing Lawrence committed suicide on July 4, 1928. During the period in which decedent received funds from his aunt he had no difficulty in paying insurance premiums, but thereafter his financial troubles began. In December, 1926, he borrowed on two policies and borrowed $5,000 from each of two friends. During the following year he borrowed on several policies and allowed others to lapse. During his wife's illness in February, 1928, he was unable to pay for nurses and expenses immediately following her death. Between March 1, 1928, and March 16, 1928, he renewed his activities on the stock market and lost $2,512.50. Between March 16, 1928, and April 5, 1928, decedent, in addition to making Katharine L. Manhart beneficiary in all of his insurance policies, delivered to her a bill of sale of all his personal property, deeded to her all of his real property except three cemetery lots, and delivered to her his will in which she was named sole legatee and made executrix without bond. At this time some of the policies had a small cash surrender value. About April 10, 1928, decedent borrowed an automobile from a dealer friend saying he could not pay for it, and on May 8th sent the friend a note to pay for the car, enclosing a letter saying: "If I should not be on hand at its maturity . . . Katharine L. Manhart, 941 South Norton Street, Los Angeles will take care of it when due." Later in May, 1928, he borrowed $1500 from the same friend. Between June 1 and June 20, 1928, he obtained $1850 by cashing checks drawn by his mother-in-law at his request, although she did not

owe him anything. Between June 20 and July 4, 1928, he cashed checks of the value of about $1800 drawn on a Boston bank, which were dishonored by the bank. At the time of the death of Violet Lawrence defendant Katharine L. Manhart was aware of decedent's impoverished condition. She assisted him in making the funeral arrangements. She herself loaned him $5,000 before the death of his wife, which had not been repaid.

Between July 14 and August 8, 1928, defendants received from the insurance companies the total amounts due on the policies, the sum of $191,801.55, and deposited it in five different banks in Los Angeles under fictitious names. It is claimed by defendants that the money was placed under the control of defendant Clair King Manhart as custodian only for the use and benefit of his wife. Shortly thereafter defendants paid the amounts due the friends of decedent who had loaned him money and made good the worthless checks. Defendant Clair King Manhart then went east and settled all claims against decedent except that of Lucy W. Whipple, paying out a sum total in excess of $25,000.

Defendant Katharine L. Manhart was appointed administratix with the will annexed of the estate of Violet Lawrence. Upon closing the estate there was distributed to the estate of George Channing Lawrence the sum of $5.91. Katharine L. Manhart was appointed executrix of the will of George Channing Lawrence in November, 1928. She published notice to creditors but nothing more was done in the administration until a petition for her removal was filed on June 6, 1929. She filed an inventory on June 27, 1929, showing that the assets of the estate were: A post mortem dividend on insurance of $181.08; note for $5,000 payable to decedent's mother-in-law endorsed in blank, dated March 20, 1928, due September 20, 1928, marked in the inventory "doubtful value"; loans of $1100 not evidenced by any writing; and the inheritance of the estate of Violet Lawrence. Katharine L. Manhart was removed from her office as executrix and the public administrator appointed in her stead.

The trial court did not determine the value of the assets of the decedent at the time of the transfers complained of or at the time of the changes of beneficiary. The evidence of the value of the assets is contained in the testimony of defendants. Among the items claimed by them as assets is a strange "fee"

asserted as due from Lucy W. Whipple for handling her affairs in the sum of $70,000. Giving all the claimed assets their highest possible value, including the "fee" of $70,000, and taking several doubtful debts due decedent at their face value, the sum total of the decedent's estate was far less than sufficient to pay the single claim of Lucy W. Whipple.

A review of the evidence leads unerringly to the conclusion that at the time of the transfers of property and changes of beneficiary the decedent was hoplessly insolvent and that the trial court's findings that the transfers and changes of beneficiary were not made to defraud creditors are not supported by the evidence. This conclusion must be reached upon a consideration of the evidence in a light most favorable to defendants.

Among the findings appears the following: "The court also finds there were certain other assets of George Channing Lawrence, deceased, which were transferred to defendant Katharine L. Manhart, but during the course of trial, plaintiff herein abandoned all right he might have in and to the assets." We find nothing in the record to justify this finding. Plaintiff is entitled to pursue the property fraudulently transferred and to force an accounting thereof from defendants.

The findings are silent on the question whether decedent died by his own hand and defendants now contend that it was not established that decedent took his own life. Many circumstances were shown in evidence indicating suicide. A certificate from the registrar of vital statistics was presented certifying to the coroner's certificate of death in which the cause of death is given as follows: "Gun shot wound of brain, suicidal." The certificate was evidence of the facts therein stated. (Stats. 1915, p. 575; *Estate of Lenci*, 106 Cal. App. 171 [288 Pac. 841]; *Robinson* v. *Western States Gas & Elec. Co.*, 184 Cal. 401 [194 Pac. 39].) No contrary showing was made.

Defendants contend that the claim of Lucy Whipple was not filed within the time allowed by law and therefore it should not have been received in evidence. An unverified claim was presented well within the legal time and thereafter a verified amended claim was filed bearing the endorsement that it had been approved by the public administrator. The date of its presentation to the public administrator was not shown. The code required the claimant either to file her claim

with the clerk or to present it to the administrator. After its approval by the public administrator the claim was approved by the court. It will not now be presumed that it was presented to the public administrator beyond the legal time limit. Moreover, the allowance of the claim is not subject to attack in this action.

In view of the facts as set forth above it is clear that the transfers of the real estate and personal property are void. The transactions are covered by section 3439 of the Civil Code: "Every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

The contention of plaintiff, that creditors may recover proceeds of insurance policies paid as the result of fraudulent changes of beneficiary by the insured while insolvent, must be upheld. Counsel have not called to our attention any California case involving a fraudulent change of beneficiary under circumstances similar to those of our case. The rule sought to be applied has been sustained in a number of other jurisdictions. In *Pope* v. *Carter*, 210 Ala. 533 [98 So. 726] the court said: "Life insurance, taken out, and premiums paid by the insured, and payable to his estate, is property subject to the payment of his debts. A voluntary conveyance or transfer of such policies of insurance is constructively fraudulent and void, as against the existing creditors of the insured. Proceeds of policies so carried by the husband, payable to his estate, and transferred to his wife by a change of the beneficiary named in the policies made after the husband has become insolvent, without valuable consideration, are subject to the claims of the husband's creditors existing at the time of such transfer. Such transaction is subject to all the rules governing fraudulent conveyances." In *Continental Nat. Bank* v. *Moore et al.*, 84 App. Div. 419 [82 N. Y. Supp. 302], the insured was a bank teller who while insolvent was arrested for embezzlement. His insurance had been payable to his estate. A creditor obtained judgment setting aside the assignment of the insurance policy to his wife and directing payment of the proceeds to the creditors. In affirming the judgment the court

said: "Pending the examination of the criminal charges against him, he ordered the change of beneficiaries and took his own life. These events occurred in such rapid succession that in the absence of any other explanation they fairly justify the inference that the decedent, contemplating the act which he shortly thereafter committed, knew that if the policies remained payable to his estate the insurance would go to his creditors, and for the purpose of averting that, and leaving them without redress, he directed the change of beneficiary." In *Navassa Guano Co.* v. *Cockfield,* 253 Fed. 883 [6 A. L. R. 1168], the insured held a policy payable at his death to his legal representative, with no surrender value. Being informed that he would soon die he substituted his brother as beneficiary. In holding the transaction fraudulent as to creditors the court said: "The insured knew that he was about to die; he had been told so by his brother. He therefore knew, or at least supposed, that presently, and long before another premium would be payable, the full amount of his policy, less the small note secured thereby, would some into the hands of his executors and be subject to the claims of creditors. The only reasonable inference is that in these circumstances he undertook to turn over to his brother, to whom it was a pure donation, the insurance money which otherwise would go to the payment of his debts. This being so, we think it cannot be said that the transferred policy was valueless. On the contrary, as it seems to us, the fact of impending death, the practical certainty that the life of the insured would end within a few days, operated to remove the element of contingency, and gave to the policy at the time of its transfer an actual pecuniary value closely approximating its face amount. The terms of the policy relating to surrender value may be controlling, when the insured entertains the ordinary expectation of life; but they should not be permitted to shield a gratuitous transfer to the prejudice of creditors, when he knows that death is an early certainty. Nor can the transfer in question be defended on the ground of difference between conscious and constructive fraud, for it is familiar doctrine that every man must be presumed to intend the natural consequences of his acts. The insurance procured by Cockfield was by his direction made payable to his legal representatives, and it thereby became, whatever its value, an asset of his estate. When he sought to change the beneficiary, he knew that

death was near, and that the proceeds of the policy, if not transferred, would soon be paid to his executors; and he was therefore chargeable with the results of his action, even if he lacked the intention of defrauding his creditors. In short, we are convinced that the transaction under review was fraudulent as to creditors and must be so adjudged." (See, also, *Gould* v. *Fleitmann,* 230 N. Y. 569 [130 N. E. 897]; *Bailey* v. *Wood et al.,* 202 Mass. 562 [89 N. E. 149]; *Iden* v. *Huber et al.,* 259 Mich. 3 [242 N. W. 818]; *Ionia County Sav. Bank* v. *McLean,* 84 Mich. 625 [48 N. W. 159]; *In re Mc-Kown's Estate,* 198 Pa. 96 [54 Atl. 1111].)

Defendants have cited the case of *North British etc. Ins. Co.* v. *Ingalls,* 109 Cal. App. 147 [292 Pac. 678]. That case, however, does not aid in the solution of our problem, since a change of beneficiary was not involved and the trial court found, the appeal being upon the judgment roll, that the insured was not insolvent at the time of his death.

By the provisions of section 956a of the Code of Civil Procedure the reviewing court may in proper cases make findings contrary to those made by the trial court based on evidence adduced before the trial court. Under any reasonable view of the evidence the allegations of the complaint must be upheld. This court therefore finds all of the allegations of the complaint to be true.

The judgment is reversed and the cause remanded to the superior court with directions to enter judgment vacating and setting aside the transfers and assignments referred to in the complaint and to grant plaintiff relief in accordance with the prayer of the complaint.

Crail, P. J., and McComb, J., *pro tem.,* concurred.