**In re CRS STEAM, INC., Debtor.**

**In re Thomas F. LeBLANC, Debtor.**

**Bankruptcy Nos. 97–44296–JFQ, 97–44297–JFQ.**

United States Bankruptcy Court, D. Massachusetts.

Feb. 11, 1998.

Kevin C. McGee, Sider & Chandler, Worcester, MA, for Debtor.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

A creditor, Engineering Resources, Inc. ("ERI"), objects to various property exemptions claimed by Thomas F. LeBlanc (the "Debtor"), who has elected to take exemptions available under Massachusetts law. At issue is the validity of exemptions claimed in a $38,000.00 whole life insurance policy and an individual retirement account having a balance of $92,059.00. Also in dispute is whether the bankruptcy estate includes the Debtor's simplified employee pension valued at $44,756.00 and, if it does, whether that too is exempt under Massachusetts law. The case presents significant questions of interpretation of Massachusetts exemption statutes. Set forth here are the court's findings and conclusions after a nonevidentiary hearing.

## I. CLAIMED EXEMPTION IN INSURANCE POLICY

■ At the filing the Debtor owned a whole life insurance policy issued by Prudential Life Insurance Company of America, Policy No. 77–841–766. The schedules do not disclose the policy's cash surrender value or its death beneficiaries. Counsel inform the court that the policy is payable at death to an intervivos trust whose beneficiaries are the Debtor's children, if any survive him, otherwise his nieces and nephews. The Debtor is at present unmarried and without children, but with nieces and nephews.

The Debtor contends the policy is exempt pursuant to section 125 of chapter 175 of the Massachusetts General Laws, which provides as follows:

·If a policy of life or endowment insurance is effected by any person on his own life or another life, in favor of a person other than himself having an insurable interest therein, the lawful beneficiary thereof, other than himself or his legal representatives, shall be entitled to its proceeds against the creditors and representatives of the person effecting the same, whether or not the right to change the named beneficiary is reserved by or permitted to such person; provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid in fraud of creditors, with interest thereon, shall

enure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless before such payment the company shall have written notice, by or on behalf of a creditor, of a claim to recover for certain premiums paid in fraud of creditors, with specification of the amount claimed. No court, and no trustee or assignee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary.

Any person to whom a policy of life or endowment insurance, issued subsequent to April eleventh, eighteen hundred and ninety-four, is made payable may maintain an action thereon in his own name.

Mass. Ann. Laws ch. 175, § 125 (Law. Co-op. 1987).

The statute protects the "lawful beneficiary" from claims of the insured's creditors to the policy's "proceeds". The "proceeds" of a life insurance policy consist of the sum payable at the insured's death. *See* Mass. Ann. Laws ch. 175, § 119B ("proceeds" at death of insured include unsecured premiums paid), § 119C ("proceeds" at death of insured include interest in certain cases), § 132 (separately regulating policy provisions concerning "loan values," "cash surrender values" and "proceeds"). The statute's penultimate sentence affords a measure of express protection to the insured during his lifetime by prohibiting the trustee in his bankruptcy proceeding from changing the beneficiary designation. But here again the statute focuses on the rights of the beneficiary in the proceeds payable at the insured's death.

Unlike, for example, the insurance exemption available under section 522(d)(8) of the Bankruptcy Code, section 125 makes no reference to the policy's "accrued dividend or interest" or "loan value." *See* 11 U.S.C. § 522(d)(8) (1994). Nor, as do some state statutes, does section 125 exempt the policy's "proceeds and avails." *See Holden v. Stratton*, 198 U.S. 202, 25 S.Ct. 656, 49 L.Ed. 1018 (1905) (exemption for "proceeds and avails" exempts cash surrender value). *See also In re Weick*, 2 F.2d 647 (6th Cir.1924) (exemp-

tion for "policies of life insurance" exempts cash surrender value); *In re Griese*, 172 B.R. 336 (Bankr.D.Colo.1994) (exemption for "avails of policies" exempts cash surrender value); *In re Buffinton*, 100 B.R. 448 (Bankr. N.D.Iowa 1987) (exemption for "unmatured life insurance policy" exempts cash surrender value). The exemption given by section 125 for "proceeds" appears to be equivalent to the exemption granted in the Bankruptcy Code for an "unmatured life insurance contract. . . ." *See* 11 U.S.C. § 522(d)(7) (1994).

Thus section 125 is open to the interpretation that it applies only after the death of the insured and does not permit the insured to protect the policy's cash surrender value from his creditors during his lifetime. Indeed, a similarly worded New Hampshire statute has been so construed, even though the New Hampshire statute refers to "proceeds and all other benefits." *See In re Monahan*, 171 B.R. 710, 717–19 (Bankr. D.N.H.1994).

The difficulty with so interpreting section 125 is that the Supreme Judicial Court of Massachusetts has adopted a contrary construction. In *Rosenberg v. Robbins*, 289 Mass. 402, 194 N.E. 291 (1935), the holder of a promissory note sought to reach and apply, in payment of the note, the cash surrender value of insurance policies owned by the note's makers and payable at death to their wives or children. Section 125 had been amended in 1928 to add its present penultimate sentence. The plaintiff apparently conceded that this amendment would bar her from reaching the cash surrender value if her debt arose after the date of the amendment's adoption. She argued only that the obligation represented by her note, which was dated February 28, 1929, came into existence in 1927 and thus was constitutionally immune from the amendment's application. The court ruled against her on this question on the ground that the note replaced the prior obligation. It therefore held she could not reach the cash surrender value of the policies. The court was rather laconic in its comments on the statute, stating:

> The plaintiff does. not contend that she can reach and apply to the payment of her note the cash surrender value of the poli-

cies if the changes in G.L. c. 175, §§ 125, 126, effected by St.1928, c. 176, are applicable to her claim. See *Dussoulas v. Lang,* 24 Fed. Rep. (2d) 254; certiorari denied 277 U.S. 593, affirming *In re Lang,* 20 Fed. Rep. (2d) 236. *In re Messinger,* 29 Fed. Rep. (2d) 158; certiorari denied *sub nomine Reilly v. Messinger,* 279 U.S. 855; *Hickman v. Hanover,* 33 Fed. Rep. (2d) 873.

*Rosenberg,* 289 Mass. at 408, 194 N.E. at 293.

A reading of the decisions cited with approval in *Rosenberg* gives some explanation of the court's holding. *In re Messinger,* for example, was a bankruptcy case involving a New York exemption statute containing much of the language of section 125. It protected the rights of the "lawful beneficiary" in the policy's "proceeds and avails." The statute lacked section 125's penultimate sentence. The court, through Augustus N. Hand, recognized that the statute spoke only of the rights of the policy's beneficiary and did not "in terms grant an exemption to the ... policy in the hands of the bankrupt...." 29 F.2d at 160. But the court concluded, without reliance upon the statutory term "avails", that the debtor could nevertheless exempt the policy from creditors whose claims arose after the statute's effective date because giving such creditors rights in the policy "would deprive the beneficiaries of their interest." *Id.* The court did not explain how payment of the cash surrender value to the trustee in bankruptcy, without policy cancellation or change of ownership, would prejudice a beneficiary's right to receive the proceeds at the debtor's death if the debtor continued to pay the premiums.[1] In any event, the reasoning of *Messinger* and the Massachusetts court in reliance on it is immaterial. My job is to apply Massachusetts law. The holding of *Rosenberg* is conclusive on the present question. *See also In re Beach,* 8 F.Supp. 910 (D.Mass.1934) (approving debtor's bankruptcy exemption of cash surrender value of policy under section 125 and relying upon *Messinger* ).

Because section 125 refers to a policy "effected" by an insured in favor of a member of a specified class of beneficiaries, the Supreme Judicial Court of Massachusetts construes the statute to apply only if the beneficiary remains unchanged since the policy was first issued. *See McCarthy v. Griffin,* 299 Mass. 309, 311, 12 N.E.2d 836, 837 (1938); *Bailey v. Wood,* 202 Mass. 562, 574, 89 N.E. 149, (1909). There is no indication that the beneficiary of the Debtor's policy has changed since its issuance.

There is nevertheless an obstacle which the Debtor fails to overcome. Section 125 grants exemption rights only for a policy taken out by a person "in favor of a person other than himself having an insurable interest therein...." Mass. Ann. Laws ch. 175, § 125 (Law. Co-op. 1987). The present policy, through a trust, is "in favor" of the Debtor's children and, if no children survive him, in favor of the Debtor's nieces and nephews. The Debtor presently has no children. So his nieces and nephews would receive beneficial interests in the proceeds if he died now. The policy is therefore at present "in favor" of the nieces and nephews. By the weight of authority, a niece or nephew does not ordinarily have an insurable interest in the life of an uncle. John Allen Appleman and Jean Appleman, *Insurance Law and Practice* § 822; Lee R. Russ and Thomas F. Segalla, *Couch on Insurance* § 43:9 (3d ed.1996). There is an exception if a parental or pecuniary relationship exits between the parties. *Id.* The Debtor does not allege any such relationship. Nor has he sought to establish that the policy contains a choice-of-law clause designating the law of a state which is not in accord with the weight of authority. He has therefore failed to qualify the policy as exempt.

## II. SIMPLIFIED EMPLOYEE PENSION AS PART OF BANKRUPTCY ESTATE

The Debtor created his simplified employee pension ("SEP") pursuant to section

---

1. This is a recognized bankruptcy procedure. The prior Bankruptcy Act contained a provision giving the debtor the right to pay a policy's cash surrender value to the trustee in bankruptcy and continue to own the policy. 11 U.S.C. § 108 (repealed 1978). The same may be accomplished under the present Code if the debtor elects the Code's exemptions in the policy's "unmatured...contract" and "loan value" but the loan value exceeds the $8,000.00 exemption available. *See* 11 U.S.C. § 522(d)(7), (8) (1994).

408(k) of the Internal Revenue Code, 26 U.S.C. § 408(k) (1994). Under section 408(k) an employee may, subject to certain restrictions, establish an individual retirement account and have his employer make contributions directly to the account. The Debtor created the SEP in December of 1994 in conjunction with his employment by CRS Steam, Inc. ("CRS"), of which he is the 100% stockholder. At the inception of the SEP the Debtor was its only eligible participant. As CRS grew so too did the number of the SEP's participants. In 1996 there were five participants.

Fidelity Management Trust Company is the SEP's "custodian". All contributions are to be invested in accordance with the Debtor's written instructions, provided that contributions must be invested in an entity registered under the Investment Company Act of 1940 for which an affiliate of the custodian serves as investment advisor. Distributions to the Debtor must begin by April 1 following the calendar year in which the Debtor attains age 70½. He is now forty.

The SEP agreement contains two clauses which are of particular relevance here. One is a so-called "spendthrift" provision stating (with an exception for domestic relations obligation): "[T]he account shall not be transferred or assigned by voluntary or involuntary act of the [Debtor] or by operation of law; nor shall it be subject to alienation, assignment, garnishment, attachment, receivership, execution, or levy of any kind." The other is a provision which permits the Debtor to terminate the SEP at any time and require that its entire balance be distributed to him.

### A. *Section 541(c)(2) and ERISA*

■ The Debtor's first line of attack in seeking to retain the SEP's benefits is unrelated to any exemption rights. Relying upon *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), he contends the SEP is not part of the bankruptcy estate in the first instance and so it is unnecessary for him to exempt it from the estate. In *Patterson* the Supreme Court excluded from the bankruptcy estate a debtor's benefits under a pension trust created by his

corporate employer. The Court did so because of section 541(c)(2) of the Bankruptcy Code which provides: "A restriction on the transfer of a beneficial interest in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title". 11 U.S.C. § 541(c)(2) (1994). The pension trust in *Patterson* had a clause prohibiting assignment of benefits by a participant or seizure of benefits by the participant's creditors. Noting that the clause is mandated by section 206(d)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1056(d)(1) (1994), the Court believed that ERISA qualified as "applicable nonbankruptcy law" within the meaning of section 541(c)(2). It therefore held the benefits never entered the bankruptcy estate. The Court did so even though section 522(d)(10)(E) of the Code, which expressly covers pension benefits, seems to assume otherwise in its grant of only a limited right to exempt pension benefits *from* the bankruptcy estate in an amount reasonably necessary for the support of the debtor or his dependants.

It is questionable that the SEP is a "trust" within the meaning of section 541(c)(2). Although labels are not controlling, the SEP agreement employs the terms "account" and "custodian", not "trust" and "trustee". Also pointing away from a trust is the clause giving the Debtor the power to direct investments. An instrument which requires a party holding funds of another to do nothing with the funds without directions from the owner creates the relationship of principal and agent rather than beneficiary and trustee. *In re Medallion Realty Trust*, 103 B.R. 8 (Bankr.D.Mass.1989), *aff'd*, 120 B.R. 245 (D.Mass.1990). I will assume for present purposes, however, that the SEP is a trust.

*Patterson* is still of no aid to the Debtor. True, the SEP contains a spendthrift clause. But ERISA does not mandate the clause. Section 206(d)(1) of ERISA, 29 U.S.C. § 1056(d)(1) (1994), has no application to an individual retirement account described in section 408 of the Internal Revenue Code. 29 U.S.C. 1051(6) (1994). The Court in *Patterson* made note of this in seeking to rebut the argument that estate exclusion of retirement

plans covered by the ERISA mandate would make the limited exemption granted by section 522(d)(10)(E) mere surplusage. *Patterson,* 504 U.S. at 762–63, 112 S.Ct. at 2248–49. *See also In re Kellogg,* 179 B.R. 379, 385–87 (Bankr.D.Mass.1995) (SEP benefits not excluded from estate by reason of ERISA mandate because anti-alienation provision not required by ERISA); *In re Taft,* 171 B.R. 497, 501 (Bankr.E.D.N.Y.1994) (same).

But is the spendthrift clause enforceable under ERISA, even though not mandated by it, so that the SEP is for that reason excluded from the estate by section 541(c)(2)? The Court in *Patterson* answered this question in the negative, albeit by way of dictum. After noting that individual retirement accounts created under section 408 of the Internal Revenue Code are excepted from ERISA's anti-alienation requirement, the Court went on to observe that these plans are for this reason not excluded from the bankruptcy estate prior to an exemption claim. *Patterson,* 504 U.S. at 763–66, 112 S.Ct. at 2249–51.

Support for estate inclusion is also found in *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). The Court there had before it an employee welfare plan providing vacation benefits. Creditors of several employees had garnished the employees' interests in the plan. The question was whether ERISA prohibited the garnishment. The Court noted that, like the SEP here, a vacation plan is not the type of plan covered by the prohibition against creditor seizure contained in section 206(d)(1), 29 U.S.C. § 1056(d)(1) (1994). It inferred from this that Congress wished to have the plan's benefits subject to creditor process. There is no mention in *Mackey* that the plan contained a spendthrift clause prohibiting the garnishment in question. The Court's broad approval of garnishment was not conditional on the absence of such a clause. This indicates that its presence in the Debtor's SEP makes no difference. In light of *Mackey* and *Patterson,* I conclude that the SEP's spendthrift clause is not enforceable under ERISA.

■ There is another reason why ERISA is not relevant here. Because the Debtor holds 100% of the stock of CRS, he is regard-ed as an employer by ERISA and hence is not entitled to assert the rights which ERISA grants employees. *Kwatcher v. Massachusetts Serv. Employees Pension Fund,* 879 F.2d 957 (1st Cir.1989). For this reason bankruptcy decisions in this district have held that a debtor's benefits under a SEP or individual retirement account are included in the bankruptcy estate. *In re Kellogg,* 179 B.R. 379, 384–85 (Bankr.D.Mass. 1995); *In re Orkin,* 170 B.R. 751, 753–54 (Bankr.D.Mass.1994).

### B. *Section 541(c)(2) and Massachusetts Law*

■ Does section 541(c)(2) exclude the SEP from the bankruptcy estate on the ground that its spendthrift clause is enforceable under Massachusetts law? Spendthrift clauses are generally enforceable in Massachusetts. *Bucknam v. Bucknam,* 294 Mass. 214, 200 N.E. 918 (1936). A party may not, however, create a trust for his own benefit, transfer property into it, and have a spendthrift clause protect the property from his creditors. *Ware v. Gulda,* 331 Mass. 68, 117 N.E.2d 137 (1954); *Merchants Nat'l Bank of New Bedford v. Morrissey,* 329 Mass. 601, 109 N.E.2d 821 (1953); *Restatement (Second) of Trusts* § 156(1) (1954). *See also State Street Bank & Trust Co. v. Reiser,* 7 Mass.App. 633, 389 N.E.2d 768 (1979) (settlor's creditors can reach assets of revocable trust even after settlor's death). The Debtor is not the settlor of the SEP. It was CRS who transferred funds into it. That the Debtor owns the stock of CRS does not make the parties identical. So the law on self-settled trusts has no application.

■ Yet the Debtor has significant control over the SEP. He can at any time require the custodian to distribute its entire balance to him. This is much like the power to revoke which in *Reiser* made the trust property subject to the settlor's debts even after his death. A power such as the Debtor holds is a general power of appointment. *Restatement (Second) of Property* § 11.4 (1986). It causes the subject property to be included in the holder's estate for federal estate tax purposes. 26 U.S.C. § 2041 (1994).

Does the Debtor's general power of appointment make the SEP's assets available to his creditors under Massachusetts law notwithstanding the spendthrift clause? If a party may appoint property to himself or others, and he exercises the power in favor of others, the property so appointed becomes available to his creditors notwithstanding his contrary direction through the power's exercise or the presence of a spendthrift clause covering his own beneficial interest in the underlying trust. *State Street Trust Co. v. Kissel,* 302 Mass. 328, 333, 19 N.E.2d 25, 28 (1939); *Shattuck v. Burrage,* 229 Mass. 448, 118 N.E. 889 (1918); *Restatement (Second) of Property* § 13.4 (1986) (exercise of general power by will subjects property to holder's creditors); *Restatement (Second) of Property* § 13.5 (1986) (exercise of general power by deed subjects property to holder's creditors if exercise constitutes fraudulent transfer).

The Debtor's power, however, remains unexercised. Because CRS is the transferor of the SEP's funds, I treat it as having created the power. The Restatement takes the position that creditors of the holder of an unexercised general power created by another cannot acquire the power or compel its exercise, except as provided by statute. *Restatement (Second) of Property* § 13.6(1) (1986). Counsel have referred the court to no Massachusetts decision passing on the present question, nor has the court's independent research disclosed one. The closest is *Sullivan v. Burkin,* 390 Mass. 864, 460 N.E.2d 572 (1984). It involved a widow's claim to a statutory intestate share of the assets of a trust, created and funded by her husband, over which he had held an unexercised general power of appointment. Recognizing the enhanced interest of one spouse in the property of the other at divorce, the court could see no principled distinction between divorce and death. It therefore ruled in the widow's favor. It noted that a general power of appointment over assets in a trust created by a third person may be subject to a different rule, citing a 1982 draft of section 13.7 of the Restatement. *Burkin,* 390 Mass.

at 873, 460 N.E.2d at 578.[2] The court thought such questions are best handled by legislation. *Id.* See also *Wolfe v. Wolfe,* 21 Mass.App.Ct. 254, 486 N.E.2d 747 (1985) (corpus of revocable trust created by husband for his benefit subject to wife's alimony rights); *Markham v. Fay,* 74 F.3d 1347, 1355–60 (1st Cir.1996) (trust property deemed property of settlor under Massachusetts law and hence subject to federal tax lien where settlor, who was also sole trustee and co-beneficiary, retained power to alter, amend or revoke trust).

According to the Restatement, creditors of the holder of an unexercised general power of appointment created by another cannot acquire the power or compel its exercise unless this is authorized by statute. *Restatement (Second) of Property* § 13.6(1) (1986). The Restatement rule is not dependant upon the presence of a spendthrift clause. There is no authorizing statute in Massachusetts. I conclude, based on the statements in *Sullivan,* that if the SEP is a trust the Supreme Judicial Court of Massachusetts would not permit the Debtor's creditors to reach its property or compel the Debtor to exercise his general power of appointment in their favor.

### C.  *Sections 541(a)(1) and 541(b)(1)*

■ Final resolution of the question of estate inclusion of the SEP turns on a bankruptcy statute not relied upon by either party. Section 541(a)(1) of the Bankruptcy Code places in the bankruptcy estate "all legal and equitable interest of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1994). Being a property interest, the Debtor's general power of appointment comes within the sweep of this provision. Any possible doubt on this is resolved by section 541(b)(1), which excludes from the estate "any power that the debtor may exercise solely for the benefit of an entity other than the debtor...." 11 U.S.C. § 541(b)(1) (1994). The Restatement recognizes that section 541 is a statute granting

**2.** As finally promulgated, § 13.7 of the Restatement takes the position that unless a statute provides otherwise a spouse takes a statutory intestate share of assets subject to an unexercised

power held by the deceased spouse only if the deceased spouse was both the donor and donee of the power. *Restatement (Second) of Property* § 13.7 (1986).

creditors rights in a debtor's general power, *Restatement (Second) of Property* § 13.6(2) (1986), and that the presence of a spendthrift clause is immaterial. *Restatement (Second) of Property* § 13.6(2) cmt. c (1986).

■ The Debtor also has a general power of appointment over the assets in his individual retirement account ("IRA"), so the IRA is for this reason also included in the bankruptcy estate. It is clear section 541(c)(2) has no application to the IRA even if the IRA agreement contains a spendthrift clause. Because the Debtor is the settlor of this "trust", the spendthrift clause is unenforceable in Massachusetts under the case law previously discussed. The Debtor's sole reliance on his asserted exemption rights in the IRA is in apparent recognition of this. I now turn to his exemption claims for both retirement plans.

## III. SEP AND IRA AS EXEMPT PROPERTY UNDER MASSACHUSETTS LAW

■ The Debtor contends his interests in the SEP and IRA constitute property which is exempt from his creditors under Section 34A of chapter 235 of the Massachusetts General Laws, which reads as follows:

The right or interest of any person in an annuity, pension, profit sharing or other retirement plan maintained in accordance with the federal Employee Retirement Income Security Act of 1974, or in any annuity or similar contract purchased with assets distributed from any of the foregoing, or in any plan maintained by an individual as a Keough Plan, a Simplified Employee Plan, or an Individual Retirement Account shall be exempt from the operation of any law relating to insolvency and shall not be attached or taken on execution or other process to satisfy any debt or liability of such person, except as may be necessary to satisfy (i) an order of a court concerning divorce, separate maintenance or child support under chapters two hundred and eight, two hundred and nine, and two hundred and seventy-three or (ii) in the event of the conviction of such person of a crime, an order of a court requiring him to satisfy a monetary penalty or make restitution to the victim of such crime. The exemption in this section for plans maintained by an individual shall not apply to sums deposited in said plans in excess of seven percent of the total income of such individual within five years of the individual's declaration of bankruptcy or entry of judgment.

Mass. Ann. Laws ch. 235, § 34A (Law. Co-op. 1986).

The statute's last sentence is opaque. The phrase "within five years of the individual's declaration of bankruptcy" obviously modifies "total income of such individual." But does it also modify "sums deposited in said plans"? If it does, the SEP and IRA are exempt to the extent that total deposits to them during the five year period are not in excess of 7% of the Debtor's total income of $327,461 for the same period. If, however, the five year phrase modifies only "total income", this means the 7% limitation applies to all deposits whenever made, which apparently do exceed 7% of $327,461.00. Indeed, unless there is a double modification the statute could be interpreted to be even more damaging to the Debtor. The 7% limitation could then conceivably apply to the total present value of both plans on the theory that the reference to deposits includes income and appreciation on deposits.

Section 34A was enacted in 1990 in much its current form but without its last sentence. 1990 Mass. Acts 77, § 1. The last sentence was inserted in 1992. 1992 Acts 153, § 30. Research discloses no legislative history bearing on the present question.

I conclude that "within five years of the individual's declaration of bankruptcy" modifies both "total income of such individual" and "sums deposited in said plans." I do so because of the inherent logic of comparing the amount of deposits during a particular period with a participant's income for the same period. Federal tax law provides an example. The deductibility of an employer's contribution to a profit-sharing plan in any year is limited to 15% of the participants' compensation for that year. 26 U.S.C. § 404(a)(3) (1994). This makes sense from the point of view of the government's fiscal purse.

More relevant to the present question, there is good reason for Massachusetts to impose a limitation upon this retirement plan exemption in terms of the proportion that the total of deposits during a prebankruptcy period bears to income for that same period. Doing so prevents an individual from "loading up" on his retirement plan exemption in preparation for bankruptcy. Courts have placed their own restrictions on prebankruptcy conversion of nonexempt property into exempt property. *See*, e.g., *Panuska v. Johnson (In re Johnson)*, 880 F.2d 78 (8th Cir.1989) (prebankruptcy conversion of nonexempt assets to exempt assets not fraudulent per se but particular circumstances can make conversion fraudulent); *Panuska v. Johnson (In re Johnson)*, 124 B.R. 290 (Bankr.D.Minn.1991) (prebankruptcy purchase of piano and harpsichord to take advantage of unlimited exemption for musical instruments deemed fraudulent in light of debtor's inability to play instruments and their lack of use).

Reading the statute to contain a double modifier, therefore, reflects significant policy. Reading it to require a proportion between total deposits for all years and income for only the previous five years produces something out of *Alice in Wonderland.*

A contrary interpretation would do more than fail to give effect to the policy against excessive loading up on exemptions. It would also improperly reduce the intended exemption. This would be particularly unfair to retirees who file for bankruptcy and have little or no income during their prior five years in retirement. Most if not all their retirement benefits would then be nonexempt. They would therefore lose their most precious asset and have no real earning potential. Some fresh start.

■ ERI invokes the "rule" of the last antecedent. Under that principle of construction, a qualifying phrase is to be applied to the word or phrase immediately preceding it rather than to others more remote. E.g., *United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 751 (1st Cir.1985); *Quindlen v. Prudential Ins. Co. of America*, 482 F.2d 876, 878 (5th Cir.1973). The typical application of the rule involves a statute containing several

words or phrases set apart by commas or disjunctives, with the later qualifying phrase unseparated by a comma. *E.g.*, *Ven–Fuel, Inc.*, 758 F.2d at 751; *First Charter Fin. Corp. v. United States*, 669 F.2d 1342, 1347 (9th Cir.1982); *Quindlen*, 482 F.2d at 877–78; *United States v. Pritchett*, 470 F.2d 455, 459 (D.C.Cir.1972).

■ There are no commas or disjunctives separating the phrases here. And there is no long list of phrases making the later qualifier quite remote from early phrases. Most important, the rule of the last antecedent is a doctrine intended merely as an aid to the court in determining the true meaning of a statute. "[I]t is only operative when there is nothing in the statute indicating that the relative words or qualifying provision is intended to have a different effect. And very slight indication of legislative purpose or a parity of reason, or the natural and common sense reading of the statute, may overturn it and give it a more comprehensive application." *Buscaglia v. Bowie*, 139 F.2d 294, 296 (1st Cir.1943) (quoting from Lewis, 2 *Sutherland Statutory Construction* § 420).

*Buscaglia* involved a statute of Puerto Rico imposing a tax "on each gallon of molasses brought into, or manufactured, sold, consumed, or otherwise disposed of for consumption in, Puerto Rico." 139 F.2d at 295. The molasses in question had been manufactured in Puerto Rico prior to the law's effective date and sold after that date outside Puerto Rico. The court held the statute did not apply, rejecting application of the rule of the last antecedent. It could see no rational reason why the legislature would require that "otherwise disposed of for consumption" be in Puerto Rico if it did not also mean that the consumption, manufacture and sale also be in Puerto Rico.

As was the First Circuit in *Buscaglia*, I am faced with a statute made nonsensical by application of the rule. The wording of section 34A, especially in light of the absence of commas and a long list of phrases, is readily susceptible to a sensible meaning. Mechanical application of the rule of the last antecedent would distort the statute and frustrate its purpose.

In support of its interpretation of section 34A ERI cites *In re Printy,* 171 B.R. 448 (Bankr.D.Mass.1994). The question there was whether ERISA preempted section 34A. In a carefully reasoned opinion Judge Feeney held there was no preemption. ERI seizes upon the wording of the order appearing at the end of the decision in which Judge Feeney states the debtor may exempt his "IRA account" in an amount not in excess of 7% of the five year total income. Judge Feeney obviously did not intend this statement to be a resolution of the present issue, which had not been argued by the parties.

One minor point remains. It seems clear that the 7% limitation contained in section 34A applies to deposits made to all plans maintained by the individual, *e.g.,* here the SEP and IRA. The Debtor does not appear to contend otherwise.

A separate order has issued denying the Debtor's exemption claim as to the policy and allowing his claims as to the SEP and IRA to the extent the total of deposits during the five year period is not in excess of 7% of $327,461.

### *ORDER ON EXEMPTION CLAIMS*

The court has today issued findings and conclusions on the objection to the Debtor's exemption claims with respect to a life insurance policy and two retirement plans. In accordance with that opinion, it is

**ORDERED,** that:

1. The Debtor's exemption claim with respect to Prudential Life Insurance Company of America Policy No. 77–841–766 is **DISALLOWED,** in full.

2. The Debtor's exemption claim with respect to his simplified pension plan and individual retirement account is **ALLOWED,** to the extent the total of deposits to them during the five year preceding the Debtor's bankruptcy filing is not in excess of 7% of $327,461.