**In re Sharon L. SLOSS Paul D. Sloss, Debtors**

**No. 00–44374–HJB.**

United States Bankruptcy Court, D. Massachusetts.

June 12, 2002.

## AMENDED MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is the "Debtors' Second Motion to Amend Schedule C" (the "Second Amendment Motion"), filed by the debtors Sharon and Paul Sloss (jointly the "Debtors"). Specifically, this Court must decide whether the cash surrender values of three life insurance policies owned by the Debtors are exempt pursuant to 11 U.S.C. § 522(b) and the somewhat arcane language of Mass. Gen. Laws ch. 175, §§ 119A, 125, and 126, substantively last amended in 1928.

## I. Procedural Background and Facts [1]

On August 14, 2000 (the "Petition Date"), Sharon and Paul Sloss filed a joint petition in this Court under Chapter 7 of the Bankruptcy Code. Shortly thereafter, David W. Ostrander (the "Trustee") was appointed as trustee in bankruptcy.

As of the Petition Date, Paul Sloss was the owner and insured of two whole life insurance policies issued by the Guardian Life Insurance Company of America (hereinafter jointly the "Guardian Policies"). Joint Stip. Facts ¶ 10. The co-debtor, Sharon Sloss, also owned and was the insured on a separate whole life insurance policy issued by the Prudential Insurance Company of America (the "Prudential Policy"). Joint Stip. Facts ¶ 19. As of the Petition Date, the cash values on these three life insurance policies totaled, in the aggregate, approximately $25,800.00. Joint Stip. Facts ¶¶ 17, 18, 22.

Initially, the Debtors opted for the federal exemptions set forth in § 522(d) of the Bankruptcy Code. The Prudential Policy was reported as owned by Paul Sloss in Schedule B, was valued there in the amount of $2,876.85 and exempted in that amount in Schedule C, pursuant to § 522(d)(7). The Guardian Policies were also reported in Schedule B as owned by Paul Sloss, were valued there in an "undetermined" amount and exempted in Schedule C, also pursuant to § 522(d)(7). Subsequently, after being granted leave to amend, the Debtors amended their Schedules B and C. Amended Schedule B listed the Prudential Policy with a cash value in the amount of $2,876.85 (but now owned by Sharon Sloss), and the Guardian Policies with cash values in the respective amounts of $19,956.36 and $2,641.64 and owned by Paul Sloss. The Debtors' amended Schedule C sought to exempt all of the value in the policies by employing a combination of exemptions in §§ 522(d)(5), (7) and (8). The Trustee timely objected to the claimed exemptions. In response, the Debtors filed the instant Second Amendment Motion, this time pursuant to § 522(b)(2), seeking to utilize Massachusetts state law

---

1. The recitation of the facts contained herein are taken primarily from the Joint Stipulation of Facts filed by the Debtors and the Chapter 7 Trustee, prepared at the request of this Court and cited as "Joint Stip. Facts at [page]," or are otherwise not materially disputed.

exemptions.[2] Joint Stip. Facts ¶ 27.

The Trustee objects to the Debtors' Second Amendment Motion. He maintains that the Debtors are not entitled to an unlimited exemption of the cash surrender values of each of the three life insurance policies. Before launching into a full scale discussion on the merits of the exemptions sought, the Court must first examine the terms of the specific life insurance policies owned by the Debtors and the state law on which the Debtors rely.

### A. The Guardian Policies

The two policies issued by Guardian are both on the life of the co-debtor, Paul Sloss. The policies are whole life policies and as such contain a feature distinguishing such policies from term life policies, namely, guaranteed policy value benefits which accumulate during the insured's lifetime.[3]

As is standard in whole life policies, the Guardian Policies' value provisions provide the owner with various financial "options." The worth of each option is calculated and directly correlated with the accumulated cash value of the policy. As the policy premiums are paid and dividends are added, the cash value of the policy increases. As the cash value increases, the owner is entitled to greater monetary benefits under the policy. For example, the owner of the policy is entitled to borrow a "policy loan" from Guardian in an amount based upon the cash value of the policy. The greater the cash value, the greater the amount that can be borrowed.

The owner is also entitled to surrender each of the policies and receive its cash surrender value.[4] The greater the premiums and dividends paid into the policy, the greater the cash surrender value. In the event of a surrender for cash, the insurance (and, accordingly, the death benefits to the beneficiaries) terminates. Joint Stip. Facts Ex. B, C (Guardian Policies) at § 5. After such a termination, the policy cannot be reinstated. Joint Stip. Facts Ex. B, C (Guardian Policies) at § 4. Unlike term life insurance in which all benefits accrue at the time of the insured's death, these policy value benefits are exercisable by the owner during the life of the policy until any of the follow occurs: the insured dies, the owner is changed, or the owner's rights are assigned. Joint Stip. Facts Ex. B, C at § 2.

The ability of the owner to exercise the lifetime benefits under the policy is independent of the death benefit rights held by the beneficiaries of the policy. Under both policies, the beneficiary (or concurrent beneficiaries if more than one beneficiary is named), is entitled to the death proceeds upon the death of the insured. Joint Stip. Facts Ex. B, C at § 2. Contingent beneficiaries stand second in line to the beneficiary, and presumably their rights only vest, if at all, upon the death of the beneficiary.[5] Joint Stip. Facts Ex. B, C at § 2. The owner retains the right to

---

2. The Debtors' proposed amended Schedule B cited "MGL ch 175 Secs 110A, 119A & B & C & Sec 125 & 132C, ch 175F Sec 15" as the basis for the claimed exemptions.

3. For a thorough discussion on cash value of whole life insurance policies, *see* 5 Couch on Insurance § 66.24 (3rd ed.1995).

4. The Guardian Policies define cash surrender value as "the sum of: (1) the cash value; (2) any due and unpaid dividend; (3) the cash value of any dividend additions; (4) the value of any dividends left at interest; and (5) any unearned loan interest; *less* any outstanding loans and loan interest." Joint Stip. Facts Ex. B, C (Guardian Policies) at § 5.

5. While the Guardian Policies are explicit in designating who is a contingent beneficiary, they do not specifically enumerate the rights of those persons.

change the beneficiary or even assign ownership in the policy. However, an owner by assignment may not change the beneficiary of the policy. Joint Stip. Facts Ex. B, C at § 2.

### 1. Guardian Policy Number 3049351

The first policy, issued by Guardian on September 24, 1986, named Paul Sloss as the owner and insured. Luzmila Sloss, Paul Sloss' wife at that time, was the named beneficiary. The policy also named their children as contingent beneficiaries. As of September 24, 2000, with dividend additions, the death benefit face amount was $107,046.00 and the cash value was $19,956.36. Joint Stip. Facts at Ex. D.

### 2. Guardian Policy Number 3420578

The second policy, issued on October 14, 1987, also named Paul Sloss as the owner and insured and the sole beneficiary under this policy was his wife at that time, Luzmila Sloss. Joint Stip. Facts at Ex. C. Taking into account the dividend additions, the values for the policy as of October 14, 2000 included a death benefit of $17,630.00 and cash value of $2,982.05.

6. Specifically, the language of the Separation Agreement states:
 F. Life Insurance: The Husband will maintain the existing life insurance policies on his life, naming the Wife as trustee for the children and sole beneficiary of the policy until the youngest child attains the age of twenty-two (22). In the event that the Husband dies without such coverage, the Wife shall have a perfected creditor's claim in the amount of $100,000.00 against the estate of the deceased Husband.
 Joint Stip. Facts at Ex. A, art. II, ¶ F.

7. The Chapter 7 Trustee asserts that a constructive change in beneficiaries occurred with the execution of the Separation Agree-

### 3. The Subsequent Divorce and Separation Agreement

As of the Petition Date, Paul Sloss had made no changes to the original beneficiary designations of the Guardian Policies. However, in July of 1992, in conjunction with their marital dissolution, Paul Sloss and Luzmila Sloss had entered into a binding Separation Agreement, pursuant to which Paul Sloss agreed to maintain the existing Guardian Policies on his life, naming Luzmila as trustee for their children, until the youngest reached the age of twenty-two.[6] Joint Stip. Facts at Ex. A, art. II, ¶ F. Yet, Paul Sloss never *actually* notified Guardian as those beneficiary designation changes. Thus, notwithstanding the terms of the Separation Agreement, Luzmila Sloss continues to be the beneficiary of record on both policies.[7]

## B. The Prudential Policy Number D83047833

The Prudential Policy, underwritten on March 17, 1977, is also a whole life policy.[8] Joint Stip. Facts ¶ 19. Sharon Sloss is both the owner and insured on the Prudential Policy. Joint Stip. Facts ¶ 19. At the time the policy was issued, Ms. Sloss named two friends as the respective primary and contingent beneficiaries. Joint Stip. Facts at Ex. F. On May 27, 1994, Sharon Sloss changed the primary benefi-

ment. Trustee Opp. Mem. at 7. Yet the Trustee has not cited this Court to any provision of Massachusetts law which would effect the change absent the voluntary act of Paul Sloss or a court order instructing Guardian to do so.

8. The actual terms of the Prudential Policy are unknown. Unlike the Guardian Policies which were attached in toto to the Joint Stipulation of Facts, the sole documentation regarding the Prudential Policy consists of a letter from the Prudential Customer Service Office, dated July 11, 2001, detailing a history of beneficiary changes to the policy.

ciary to Paul Sloss. Joint Stip. Facts at Ex. F. No further changes have been made to the policy.

As of the Petition Date, the Prudential Policy had a death benefit value of approximately $11,000.00, and a cash value of approximately $2,800. Joint Stip. Facts ¶ 19.

## II. Discussion

 Section 541 of the Bankruptcy Code defines what constitutes property of a debtor's estate. 11 U.S.C. § 541 (1993 & Supp.2002). The broad language of § 541 encompasses the interest of a debtor in a life insurance policy. 11 U.S.C. § 541(a)(1) (including "all legal or equitable interests of the debtor in property as of the commencement of the case" as property of the debtor's bankruptcy estate). As the Debtors were the respective owners of the Guardian and Prudential policies now before the Court, the cash value of the life insurance policies constitute property of their bankruptcy estates. *See generally In re CRS Steam, Inc.*, 217 B.R. 365 (Bankr.D.Mass.1998).

The Bankruptcy Code permits debtors to choose alternative exemption schema (other than in those states which have opted out of the exemption scheme under § 522(b)(1)). 11 U.S.C. § 522(b). Here, the Debtors seek leave to amend in order to utilize their state law exemptions. Because they were domiciliaries of the Commonwealth of Massachusetts for at least 180 days prior to the Petition Date, the applicable state law is that of the Commonwealth of Massachusetts. 11 U.S.C. § 522(b)(2)(A).

### A. Massachusetts Life Insurance Exemption Statutes

In their proposed second amended Schedule C, the Debtors claim exemptions in the entire amount of the respective cash surrender values of all three life insurance policies, citing Mass. Gen. Laws ch. 175, §§ 110A, 119A, 119B, 119C, 125, 132C, and Mass. Gen. Laws ch. 175F, § 15. Joint Stip. Facts Ex. G. Since receiving the Trustee's opposition, the Debtors have honed their claimed exemptions, now relying solely upon §§ 119A, 125, and 126, and waiving the others. Debtors' Mem. in Suppt. of Exemp. at 2. Accordingly, the issues before this Court relate to the application of those provisions of Massachusetts state law. Comparisons and analogies to the treatment of life insurance cash surrender values under the § 522(d) exemption scheme or under decisions of courts construing other state exemption laws are of extremely limited use.[9]

There is, however, scant recent authority construing Massachusetts statutory ex-

---

9. Several states have similarly worded exemption statutes related to life insurance. *See, e.g.*, N.H.Rev.Stat. Ann. § 408:2 (2001); Ky. Rev.Stat. Ann § 304.14–300 (Banks–Baldwin 2001); N.Y. Insurance Law § 3212 (2000); Okla. Stat. Ann. tit. 36, § 3631.1 (1999). Courts interpreting these statutes, both in bankruptcy and non-bankruptcy collection matters have construed the almost identical statutes with diametrically different results. *See, e.g., In re Monahan*, 171 B.R. 710 (Bankr. D.N.H.1994) (holding New Hampshire exemption statute does not apply to debtor's interest in cash surrender value of life insurance policy); *In re Pfaffinger*, 164 F. 526 (W.D.Ky.1908) (holding that bankruptcy trust-ee not entitled to cash surrender value of life insurance policy held by debtor under Kentucky exemption statute); *In re Messinger*, 29 Fed.Rep.2d 158 (2d Cir.1928) (construing New York exemption law and holding cash surrender value exempt); *McConnico v. Privett (In re Privett)*, 435 F.2d 261 (10th Cir. 1970) (applying Oklahoma exemption statute containing virtually identical language to Massachusetts statute and concluding that statutory language protecting rights of beneficiaries from debtor/insured's creditors imputes an exemption to debtor for cash surrender value, but requiring debtor, as a condition subsequent to the exemption not to change beneficiaries to his benefit).

emptions to the cash surrender value of life insurance policies. Even less authority exists in the context of bankruptcy cases. Indeed, only one bankruptcy court in this district has recently applied the Massachusetts life insurance exemption statute in a published decision, and did so only peripherally. *See, e.g., In re CRS Steam, Inc.*, 217 B.R. at 365 (noting that § 125 applies in determining exemption of life insurance cash surrender values but deciding beneficiaries fell outside class of interests protected by exemption statute). This case, therefore, presents issues of first impression in this district.

Massachusetts courts have provided some guidance in the interpretation and applicability of the instant exemption statutes, albeit primarily before World War II. Old law, however, is not necessarily bad law. Although decided outside of the bankruptcy context in connection with creditor actions to reach and apply (or in accordance with the now repealed Bankruptcy Act), several Massachusetts cases have applied the exemption statutes and held that, *provided certain conditions are met*, the entire cash surrender value of a life insurance policy is exempt from the claims of creditors. *See, e.g.*, Mass. Gen. Laws ch. 175, §§ 119A, 125, 126.

### 1. Mass. Gen. Laws ch. 175, § 119A

■ The Debtors generally rely upon Mass. Gen. Laws ch. 175, § 119A in averring that the cash surrender values of all three policies are exempt. Section 119A governs any person's interests in the proceeds or interest installments in annuity contracts or life insurance policies.[10] The section is narrowly focused and protects a beneficiary's interest from his or her creditors only where the terms of the policy *expressly* prohibit the beneficiary from "commut[ing], anticipat[ing], encumber[ing], alienat[ing] or assign[ing]" that interest in the policy. Mass. Gen. Laws ch. 175, § 119A.

The exemption in § 119A is inapplicable here. Nowhere in the language of the Guardian Policies are the rights of the owner, insured or beneficiary to "commute, anticipate, encumber, alienate or assign" the proceeds under the policy restricted. Quite to the contrary, the owner is permitted to change the owner or beneficiary at will, and, upon receipt of documentation satisfactory to Guardian, the insurer agrees to recognize the owner's or beneficiary's assignment of his or her interests in the proceeds of the policy. *See, e.g.*, Joint Stip. Facts at Ex. B, § 2; Joint Stip. Facts at Ex. C, § 2.

As for the Prudential Policy, the Debtors have failed to provide its terms. As a result, this Court has no basis upon which to find that the policy expressly contains language restricting the rights of the owner, insured or beneficiary.

### 2. Mass. Gen. Laws ch. 175, § 125

The somewhat convoluted language of Section 125 also provides the beneficiary of

---

**10.** Section 119A states:

If, under the terms of any annuity contract or policy of life insurance, or under any written agreement supplemental thereto, issued by any life company, the proceeds are retained by such company at maturity or otherwise, no person entitled to any part of such proceeds, or any instalment[sic] of interest due or to become due thereon, shall be permitted to commute, anticipate, encumber, alienate or assign the same, or any part there-

of, *if such permission is expressly withheld by the terms of such contract, policy or supplemental agreement;* and if such contract, policy or supplemental agreement so provides, no payments of interest or principal shall be in any way subject to such person's debts, contracts or engagements, nor to any judicial processes to levy upon or attach the same for payment thereof....

Mass. Gen. Laws ch. 175, § 119A (1998) (emphasis added).

a life insurance policy with certain protections from the claims of an insured's creditors. Specifically, it provides that:

> [i]f a policy on life ... insurance is *effected* by any person on his own life ..., in favor of a person other than himself having an insurable interest therein, *the lawful beneficiary thereof,* other than himself or his legal representatives, shall be entitled to its *proceeds* against the creditors and representatives of the person effecting the same, whether or not the right to change the named beneficiary is reserved or permitted to such person; provided, that, subject to the statute of limitations, the amount of any premiums paid for said insurance paid in fraud of creditors, with interest thereon, shall inure to their benefit from the proceeds of the policy .... *No court, and no trustee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary.*

Mass. Gen. Laws ch. 175, § 125 (1998) (emphasis added).

██ The availability of the § 125 exemption is limited by two caveats. First, any policy premiums paid in fraud of creditors will not be protected by the exemption. *See, e.g.,* Mass. Gen. Laws ch. 175, § 125. *See also Bailey v. Wood,* 202 Mass. 562, 565, 89 N.E. 149, 150 (1909). Second, the protected beneficiary must be part of the class designated in the statute. Section 125 does not protect all beneficiaries; only those originally named at the time the policy was first "effected." *McCarthy v. Griffin,* 299 Mass. 309, 311, 12 N.E.2d 836, 837 (1938); *Bailey,* 202 Mass. at 575, 89 N.E. at 155; *accord In re CRS Steam, Inc.,* 217 B.R. 365, 369 (Bankr.D.Mass. 1998). Those who claim the protections of § 125 but became beneficiaries after the policy was issued cannot prevail. *McCarthy,* 299 Mass. at 311, 12 N.E.2d at 837.

### 3. Mass. Gen. Laws ch. 175, § 126

Section 126 creates a special exemption to protect life insurance interests held by married women. It states:

> [e]very policy of life or endowment insurance made payable to or for the benefit of a married woman, or after its issue, assigned, transferred or in any way made payable to a married woman, or to any person in trust for her or for her benefit, whether procured by herself, her husband or by any other person, and whether the assignment or transfer is made by her husband or by any other person, and whether or not the right to change the named beneficiary is reserved by or permitted to the person effecting such insurance, shall inure to her separate use and benefit, and to that of her children .... No court, and no trustee or assignee for the benefit of creditors, shall elect for the person effecting such insurance to exercise such right to change the named beneficiary.

Mass. Gen. Laws ch. 175, § 126 (1998). Section 126 operates to protect a married woman's interest as a beneficiary from the insured's creditors. *Mass. Linotyping Corp. v. Fielding,* 312 Mass. 147, 151, 43 N.E.2d 521, 523 (1942).

██ Unlike § 125, the § 126 exemption affords greater protections to a beneficiary who is a married woman, as the exemption is available regardless of whether the policy was originally "effected" with her as a beneficiary. *Rosenberg v. Robbins,* 289 Mass. 402, 407, 194 N.E. 291, 293 (1935) (stating §§ 125, 126 cash surrender value exemption); *see also Mass. Linotyping,* 312 Mass. at 152, 43 N.E.2d at 524 (recognizing protection of married women's subsequent interest in life insurance policy as against husband's trustee in bankruptcy). Thus, the sole criteria for an

exemption pursuant to § 126 is that the beneficiary at the time of attempted levy against the policy is a married woman. *Rosenberg*, 289 Mass. at 407, 194 N.E. at 293.[11]

#### 4. Extension of Exemption to Cash Surrender Value of Policies Owned by the Debtor

Of course, the respective provisions of §§ 125 and 126 are focused upon the rights of *beneficiaries* of life insurance policies and not on the rights of the policy *owners*. Applying those sections to whole life insurance policies which, on the one hand, offer death proceeds to beneficiaries and on the other, provide guaranteed policy values to owners, presents a certain quandary. What is the effect of these beneficiary exemptions upon the separate cash value interests held by the owner-insured of a life insurance policy?

In response, Massachusetts courts have concluded that in order to fully protect a beneficiary's interest in a life insurance policy, §§ 125 and 126 should be construed to exempt the cash surrender value held by the owner. *Id.* at 402, 194 N.E. 291; *In re CRS Steam, Inc.*, 217 B.R. 365; *In re Beach*, 8 F.Supp. 910.

The *Rosenberg* case, decided by the Massachusetts Supreme Judicial Court, was the first to apply the then newly amended statutes. *Rosenberg*, 289 Mass. at 405, 194 N.E. at 292. In attempting to reach and apply the cash surrender value of the policy that named the insured's wife and child as beneficiaries, the plaintiff-creditor conceded, and the court peripherally acknowledged, that the newly amended §§ 125 and 126 prevented creditors from forcing the debtor-insured to surrender the policy for cash. *Id.* at 406, 194

N.E. at 293. In the *Beach* case, a bankruptcy case decided by the United States District Court for the District of Massachusetts under the former Bankruptcy Act, and in *CRS Steam,* a bankruptcy case decided by former Bankruptcy Judge Queenan under the Bankruptcy Code, the *Rosenberg* decision was ruled conclusive. This Court agrees.

■ Accordingly, this Court holds that if a beneficiary's interest is protected by §§ 125 or 126, the cash surrender value of the policy is protected and exempt from the bankruptcy estate as well.

### B. The Massachusetts Exemption Statutes and The Guardian Policies

#### 1. The Beneficiary's Protected Interest Pursuant to Mass. Gen. Laws ch. 175, § 125.

■ As discussed above, in order to be entitled to the statutory protection from an insured's creditors, a beneficiary of a policy must be a "lawful beneficiary." Mass. Gen. Laws ch. 175, § 125. One is characterized as a "lawful beneficiary" if he or she has an insurable interest in the life of the insured. Mass. Gen. Laws ch. 175, § 125; *McCarthy*, 299 Mass. 309, 12 N.E.2d 836. Luzmila has an insurable interest in the life of the debtor-insured and was the beneficiary at the time the policies were "effected." Mass. Gen. Laws ch. 175, § 125; *McCarthy*, 299 Mass. at 311, 12 N.E.2d at 837 (noting protection of "originally effected beneficiary" rule); *Mutual Life Ins. Co. v. Allen*, 138 Mass. 24, 28, (1884) (recognizing wife and children as holding an insurable interest of life of husband).

---

**11.** Neither party raised, and thus this Court does not address, whether this gender-based distinction passes muster under the Equal Protection Clause of the 14th Amendment to the United States Constitution.

However, notwithstanding her insurable interest, Luzmila Sloss' current status as beneficiary is decidedly different from her status at the time that the Guardian Policies were first issued. When the Guardian policies were first "effected," Luzmilla Sloss was a beneficiary in her own right. That changed. Pursuant to the Settlement Agreement executed by the parties and incorporated by the Probate Court into its divorce decree, Luzmila agreed that she would thereafter have no beneficial interest in her beneficiary status; that is, that her status as beneficiary would only extend to her holding that status in trust for her children. By virtue of that change, the children of Paul and Luzmila Sloss became the true primary beneficiaries of the Guardian Policies. True, the records maintained by Guardian do not reflect a change of beneficiary. However, even if Guardian paid the death benefit of the policies to Luzmila Sloss without reservation, she would be required under the separation agreement to hold those proceeds in trust for her children, and would not be free to use the proceeds for her own benefit. Accordingly, Luzmila, as trustee, is not an original beneficiary of the Guardian Policies, and accordingly, the exemption afforded by Mass. Gen. Laws ch. 175, § 125 is inapplicable as applied to Luzmilla.

The foregoing ruling completely disposes of the exemption claimed as to the cash surrender value of Guardian Policy No. 3420578. There, Luzmilla was the sole beneficiary. However, the facts and analysis are different with respect to Guardian Policy No. 3049351. There, the children who were the original contingent beneficiaries at the outset are now the primary beneficiaries, albeit that their interests are held in trust by their mother. Their entitlement to the death benefits of that policy has not changed other than to increase from that which existed when the policy issued.[12] Section 125 does not distinguish between primary and contingent beneficiaries. Accordingly, this Court finds and rules that the cash surrender value in Guardian Policy No. 3049351 is exempt, pursuant to § 125.

## 2. The Beneficiary's Protected Interests Under Mass. Gen. Laws ch. 175, § 126.

The protection of Luzmila's rights as trustee in the Guardian Policies fare no differently under § 126. As previously discussed, § 126 protects the interests of beneficiaries who are married women. Massachusetts courts have ruled that divorce does not abrogate the protections of § 126. *Handrahan v. Moore*, 332 Mass. 300, 303, 124 N.E.2d 808, 810 (1955); *Green v. Green*, 13 Mass.App.Ct. 340, 433 N.E.2d 92 (1982). Rather, where a divorce judgment requires that a husband maintain the existing life insurance policies in favor of his ex-wife, the bar to changing beneficiaries operates to give the wife an equitable interest in the policies. *Handrahan*, 332 Mass. at 303, 124 N.E.2d at 810.

Yet, it is not because of Luzmila's status as a divorcee that § 126 fails to provide protection for the cash value of the policies. As explained above, the Court can not ignore the fact that Luzmila is not the true beneficiary in her own right. Paul Sloss is maintaining the life insurance policies for the benefit of the minor children and not his ex-wife. Luzmila holds her interest, not as a "married woman," but as trustee for children neither of whom

---

12. This Court need not reach the question of whether the result would be different if the contingent beneficiaries had not changed their status, but a change was made to the primary beneficiary.

are married women. Accordingly, the exemption provided under § 126 is inapplicable.

## C. The Prudential Policy

 Finally, this Court rules that Mass. Gen. Laws ch. 175, §§ 125 and 126 are inapplicable to the cash surrender value of the Prudential Policy. The Prudential Policy was taken out on the life of the debtor, Sharon Sloss. Initially, Ms. Sloss named a friend as the primary beneficiary and subsequently, in 1994, changed the beneficiary to the co-debtor, Paul Sloss. Joint Stip. Facts at Ex. F. Section 126 is only available to married women who are beneficiaries under a life insurance policy. Mass. Gen. Laws ch. 175, § 126. Paul Sloss does not fall into the class of "married women." Thus, § 126 can not be employed to exempt Paul Sloss' rights as beneficiary in the policy.[13]

Section 125 is equally incompatible with protecting the debtors' interests in the Prudential Policy. First, Paul Sloss was not the original beneficiary of the Prudential Policy, and, for that reason alone, § 125 is inapplicable. Second, § 125 does not protect a beneficiary's interest in the life insurance policy from his or her *own* creditors. *Goldman v. Moses,* 287 Mass. 393, 396, 191 N.E. 873, 874 (1934) (holding that debtor-beneficiary's interest in life insurance policy subject to the claims of their own creditors) *citing Troy v. Sargent,* 132 Mass. 408 (1882). *See also In re Beach,* 8 F.Supp. 910 (D.Mass.1934) (noting that § 125 provides an exemption insofar as the "beneficiaries *other than the [debtors]* may have an interest in the policy").

## III. Conclusion

The Second Amendment Motion will be allowed in part and denied in part. Paul Sloss may exempt the cash surrender value in Guardian Policy No. 3049351, pursuant to § 125, because the children of Paul Sloss and Luzmilla Sloss are original beneficiaries of those policies. Paul Sloss may not exempt the cash surrender value in Guardian Policy No. 3420578, pursuant to § 125, because Luzmilla Sloss was the only original beneficiary and she has waived her rights thereto, other than as trustee. For the reasons set forth above, the claimed exemptions under §§ 119A and 126 are inapplicable.

An Order will issue consistent with this Amended Memorandum of Decision.

---

**13.** Similarly, § 126 is inapplicable to Sharon Sloss' present interests in the policy as owner, as the exemption applies solely to the protec-

tion of beneficiaries from creditors of the insured. Ms. Sloss is not a beneficiary and hence § 126 is inapplicable.